TS:GDA:NB
F.#2003R01783

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JOSEPH MASSINO,
    also known as "Joseph
    Messina,"
VINCENT BASCIANO,
    also known as "Vinny
    Gorgeous" and "Vinny
    from the Bronx,"
PATRICK DEFILIPPO,
    also known as "Patty from
    the Bronx,"
ANTHONY DONATO,
    also known as "Little
    Anthony,"
EMANUEL GUARAGNA,
JOHN JOSEPH SPIRITO,
    also known as "Johnny
    Joe," and
ANTHONY SIANO,

            Defendants.

- - - - - - - - - - - - - - - X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ NOV 1 8 2004 ★

BROOKLYN OFFICE

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 03 Cr. 0929 (S-2)(NGG)
(T. 18, U.S.C., §§ 371,
892(a), 894(a)(1), 922(g)(1),
924(a)(2), 924(c)(1)(A)(iii),
924(e), 1955, 1959(a)(1),
1959(a)(5), 1962(d), 1963,
2315, 2 and 3551 et seq.)

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

        At all times relevant to this superseding indictment,
unless otherwise indicated:

<u>The Enterprise</u>

        1.    The members and associates of the Bonanno organized
crime family of La Cosa Nostra (the "Bonanno family"), also known

as the Massino family, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The Bonanno family engaged in, and its activities affected, interstate and foreign commerce. The Bonanno family was an organized criminal group that operated in the Eastern District of New York, other parts of the United States and Canada.

2. The Bonanno family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Bonanno family, also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Bonanno family.

3. Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

4. Above the captains were the three highest-ranking members of the Bonanno family. The head of the Bonanno family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes between members and associates

of the Bonanno family and members and associates of other criminal organizations, and approving all significant actions taken by members and associates of the Bonanno family, including murder.

5. The boss, underboss and consigliere of the Bonanno family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Bonanno family. In return for their supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew.

6. The Bonanno family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families." The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families. For a period of time, the boss of the Bonanno family was removed from membership within the commission.

7. From time to time, the Bonanno family would propose a list of associates to be "made," that is, to become members of the Bonanno family. The list would be circulated to the other families based in New York City. Upon becoming "made," each member

3

would take an oath of "omerta," vowing never to reveal any information about the Bonanno family, its members or associates.

8.    At various times, the defendant JOSEPH MASSINO, also known as "Joseph Messina," was the boss, a captain or a soldier within the Bonanno family; the defendant VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," was a captain, a soldier or an associate within the Bonanno family; the defendant PATRICK DEFILIPPO also known as "Patty from the Bronx," was a captain, a soldier or an associate in the Bonanno family; the defendants ANTHONY DONATO, also known as "Little Anthony," EMANUEL GUARAGNA and JOHN JOSEPH SPIRITO, also known as "Johnny Joe," were soldiers or associates within the Bonanno family; and the defendant ANTHONY SIANO was an associate within the Bonanno family.

The Purposes, Methods and Means of the Enterprise

9.    The  Bonanno  family  constituted  an  ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The principal purpose of the Bonanno family was to generate money for its members and associates.  This purpose was implemented by members and associates of the Bonanno family through various criminal activities, including arson, credit card fraud, drug trafficking, extortion, kidnaping, illegal gambling, interstate transportation of stolen goods, loansharking, and robbery.  The members and associates of the Bonanno family also furthered the

4

enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

10. Although the primary purpose of the Bonanno family was to generate money for its members and associates, the members and associates at times used the resources of the Bonanno family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Bonanno family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

11. The members and associates of the Bonanno family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

12. Members and associates of the Bonanno family often coordinated street-level criminal activity, such as drug trafficking, illegal gambling, loansharking, extortion, and robbery, with members and associates of other organized crime families.

COUNT ONE
(Racketeering Conspiracy)

13. The allegations in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. In or about and between January 1979 and November 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," PATRICK DEFILIPPO, also known as "Patty from the Bronx," ANTHONY DONATO, also known as "Little Anthony," EMANUEL GUARAGNA, JOHN JOSEPH SPIRITO, also known as "Johnny Joe," and ANTHONY SIANO, together with others, being persons employed by and associated with the Bonanno family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5).

15. The pattern of racketeering activity through which the defendants VINCENT BASCIANO, PATRICK DEFILIPPO, ANTHONY DONATO, EMANUEL GUARAGNA, JOHN JOSEPH SPIRITO and ANTHONY SIANO agreed to conduct the affairs of the enterprise consisted of the racketeering acts set forth below as racketeering acts 1 through 18 of this superseding indictment. Each defendant agreed that at least two

6

acts of racketeering would be committed in the conduct of the affairs of the enterprise.

## RACKETEERING ACT ONE
(Illegal Gambling – Policy Operation)

16. In or about and between January 1979 and January 2003, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants VINCENT BASCIANO and ANTHONY DONATO, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving policy, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(2) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

## RACKETEERING ACT TWO
(Illegal Gambling – Joker-Poker Machines)

17. In or about and between January 1979 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, PATRICK DEFILIPPO, ANTHONY DONATO, EMANUEL GUARAGNA and JOHN JOSEPH SPIRITO, together with others, knowingly and

intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving the use of joker-poker type gambling machines, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.30(2) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

### RACKETEERING ACT THREE
(Attempted Murder)

18.    On or about November 14, 1985, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, PATRICK DEFILIPPO and ANTHONY DONATO, together with others, knowingly and intentionally attempted to cause the death of John Doe #1, an individual whose identity is known to the grand jury, in violation of New York Penal Law Sections 125.25(1), 110.00 and 20.00.

### RACKETEERING ACT FOUR
(Illegal Gambling - Bookmaking)

19.    The defendants PATRICK DEFILIPPO and JOHN JOSEPH SPIRITO, together with others, committed the following acts, either one of which alone constitutes racketeering act four:

8

A.    Federal Gambling Law

20.    In or about and between January 1990 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PATRICK DEFILIPPO and JOHN JOSEPH SPIRITO, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a bookmaking operation, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

B.    State Gambling Law

21.    In or about and between January 1990 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PATRICK DEFILIPPO and JOHN JOSEPH SPIRITO, together with others, knowingly and intentionally advanced and profited from unlawful gambling activity by engaging in bookmaking, in that they received and accepted in any one day more than five bets totaling more than five

thousand dollars, in violation of New York Penal Law Sections 225.10(1) and 20.00.

RACKETEERING ACT FIVE
(Arson)

22. The defendant VINCENT BASCIANO committed the following acts, either one of which alone constitutes racketeering act five:

A.    Arson Conspiracy

23. On or about and between August 1, 1993 and September 30, 1993, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally conspired to damage a building, to wit: a residential building located at 1420 Crotona Avenue, Bronx, New York, by starting a fire, in violation of New York Penal Law Sections 150.10 and 105.10.

B.    Arson

24. On or about September 30, 1993, within the Southern District of New York, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally damaged a building, to wit: a residential building located at 1420 Crotona Avenue, Bronx, New York, by starting a fire, in violation of New York Penal Law Sections 150.10 and 20.00.

10

## RACKETEERING ACT SIX
### (Attempted Murder)

25. The defendant VINCENT BASCIANO committed the following acts, any one of which alone constitutes racketeering act six:

### A. Conspiracy to Murder John Doe #2

26. On or about and between November 7, 1993 and February 10, 1994, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally conspired to cause the death of John Doe #2, an individual whose identity is known to the grand jury, in violation of New York Penal Law Sections 125.25(1) and 105.15.

### B. Attempted Murder of John Doe #2

27. On or about February 2, 1994, within the Southern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally attempted to cause the death of John Doe #2, in violation of New York Penal Law Sections 125.25(1), 110.00 and 20.00.

### C. Attempted Murder of John Doe #2

28. On or about February 4, 1994, within the Southern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally attempted to cause the death of John Doe #2, in violation of New York Penal Law Sections 125.25(1), 110.00 and 20.00.

## RACKETEERING ACT SEVEN
(Extortionate Collection of Credit Conspiracy)

29.  In or about and between December 1996 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants PATRICK DEFILIPPO, EMANUEL GUARAGNA and ANTHONY SIANO, together with others, knowingly and intentionally conspired to use extortionate means to collect and attempt to collect extensions of credit, in violation of Title 18, United States Code, Section 894(a)(1).

## RACKETEERING ACT EIGHT
(Extortionate Collection of Credit - John Doe #3)

30.  In or about and between December 1996 and December 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants PATRICK DEFILIPPO and EMANUEL GUARAGNA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #3, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

## RACKETEERING ACT NINE
(Extortionate Collection of Credit - John Doe #4)

31.  In or about and between December 1996 and June 2000, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant EMANUEL GUARAGNA, together with others, knowingly and intentionally participated in

12

the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #4, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

## RACKETEERING ACT TEN
(Extortionate Collection of Credit - John Doe #5)

32. In or about and between January 1998 and August 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants PATRICK DEFILIPPO, EMANUEL GUARAGNA and ANTHONY SIANO, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #5, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

## RACKETEERING ACT ELEVEN
(Murder)

33. The defendants PATRICK DEFILIPPO and JOHN JOSEPH SPIRITO, together with others, committed the following acts, either one of which alone constitutes racketeering act eleven:

A.  Conspiracy to Murder Gerlando Sciascia

34. On or about and between March 1, 1999 and March 18, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PATRICK DEFILIPPO and JOHN JOSEPH SPIRITO, together with others, knowingly

13

and intentionally conspired to cause the death of Gerlando Sciascia, also known as "George from Canada," in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.    Murder of Gerlando Sciascia

35.    On or about March 18, 1999, within the Southern District of New York, the defendants PATRICK DEFILIPPO and JOHN JOSEPH SPIRITO, together with others, with intent to cause the death of Gerlando Sciascia, also known as "George from Canada," caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

RACKETEERING ACT TWELVE
(Illegal Gambling – Bookmaking/Policy Operation)

36.    The defendants EMANUEL GUARAGNA and ANTHONY SIANO, together with others, committed the following acts, either one of which alone constitutes racketeering act twelve:

A.    Illegal Gambling — Bookmaking

37.    In or about and between March 2000 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants EMANUEL GUARAGNA and ANTHONY SIANO, together with others, knowingly and intentionally advanced and profited from unlawful gambling activity by engaging in bookmaking, in that they received and accepted in any one day more than five bets totaling more than five thousand dollars, in violation of New York Penal Law Sections 225.10(1) and 20.00.

14

## B.  Illegal Gambling – Policy Betting Operation

38.  In or about and between March 2000 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant EMANUEL GUARAGNA, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving policy, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(2) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

### RACKETEERING ACT THIRTEEN
(Extortionate Collection of Credit – John Doe #6)

39.  In or about and between March 2000 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant EMANUEL GUARAGNA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #6, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

15

## RACKETEERING ACT FOURTEEN
(Extortionate Collection of Credit - John Doe #7)

40.    In or about and between September 2000 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant EMANUEL GUARAGNA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #7, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

## RACKETEERING ACT FIFTEEN
(Receipt of Stolen Property - Tires)

41.    In or about and between December 2000 and January 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant EMANUEL GUARAGNA, together with others, did knowingly and intentionally receive, possess, conceal, store, barter, sell and dispose of goods, wares and merchandise of the value of $5,000 or more, to wit: a truckload of tires, which goods, wares and merchandise crossed a state boundary after being stolen, unlawfully converted and taken, knowing the same to have been stolen, unlawfully converted and taken, in violation of Title 18, United States Code, Sections 2315 and 2.

## RACKETEERING ACT SIXTEEN
### (Extortionate Extension of Credit)

42. In or about and between January 2001 and January 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant JOHN JOSEPH SPIRITO, together with others, knowingly and intentionally made extortionate extensions of credit, in violation of Title 18, United States Code, Sections 892(a) and 2.

## RACKETEERING ACT SEVENTEEN
### (Murder)

43. The defendant VINCENT BASCIANO, together with others, committed the following acts, either one of which alone constitutes racketeering act seventeen:

A.   Conspiracy to Murder Frank Santoro

44. On or about and between January 1, 2001 and February 15, 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally conspired to cause the death of Frank Santoro, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.   Murder of Frank Santoro

45. On or about February 15, 2001, within the Southern District of New York, the defendant VINCENT BASCIANO, together with others, with intent to cause the death of Frank Santoro, caused his

17

death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

### RACKETEERING ACT EIGHTEEN
(Extortionate Collection of Credit - John Doe #8)

46. In or about and between March 2001 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants EMANUEL GUARAGNA and ANTHONY SIANO, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #8, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

### COUNT TWO
(Illegal Gambling - Joker Poker Machines)

47. In or about and between January 1979 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," PATRICK DEFILIPPO, also known as "Patty from the Bronx," ANTHONY DONATO, also known as "Little Anthony," EMANUEL GUARAGNA and JOHN JOSEPH SPIRITO, also known as "Johnny Joe," together with others, knowingly and intentionally conducted, financed, managed,

18

supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving the use of joker-poker type gambling machines, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.30(2) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955, 2 and 3551 et seq.)

## COUNT THREE
(Illegal Gambling Conspiracy - Bookmaking)

48. In or about and between January 1990 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PATRICK DEFILIPPO, also known as "Patty from the Bronx," and JOHN JOSEPH SPIRITO, also known as "Johnny Joe," together with others, knowingly and intentionally conspired to conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a bookmaking operation, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.10(1) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in

19

substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Section 1955.

49. In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants PATRICK DEFILIPPO, also known as "Patty from the Bronx," and JOHN JOSEPH SPIRITO, also known as "Johnny Joe," together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

a. On or about June 11, 2001, a coconspirator discussed the gambling operation, including the daily "wins" and "losses" from a gambling room in Brooklyn, New York.

b. On or about August 28, 2001, a coconspirator discussed the gambling operation, including the daily "wins" and "losses" from a gambling room in Brooklyn, New York.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT FOUR
(Illegal Gambling - Bookmaking)

50. In or about and between January 1990 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PATRICK DEFILIPPO, also known as "Patty from the Bronx," and JOHN JOSEPH SPIRITO, also known as "Johnny Joe," together with others,

20

knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a bookmaking operation, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.10(1) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955, 2 and 3551 et seq.)

## COUNT FIVE
(Extortionate Collection of Credit Conspiracy)

51. In or about and between December 1996 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants PATRICK DEFILIPPO, also known as "Patty from the Bronx," EMANUEL GUARAGNA and ANTHONY SIANO, together with others, knowingly and intentionally conspired to use extortionate means to collect and attempt to collect extensions of credit.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT SIX
(Extortionate Collection of Credit - John Doe #3)

52. In or about and between December 1996 and December 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants PATRICK DEFILIPPO, also known as "Patty from the Bronx," and EMANUEL GUARAGNA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #3.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT SEVEN
(Extortionate Collection of Credit - John Doe #4)

53. In or about and between December 1996 and June 2000, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant EMANUEL GUARAGNA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #4.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT EIGHT
(Extortionate Collection of Credit - John Doe #5)

54. In or about and between January 1998 and August 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants PATRICK

22

DEFILIPPO, also known as "Patty from the Bronx," EMANUEL GUARAGNA and ANTHONY SIANO, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #5.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

### COUNT NINE
(Murder in Aid of Racketeering)

55. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

56. The Bonanno Family, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, extortion and gambling, in violation of New York Penal Law, acts indictable under Title 18, United States Code, Sections 892, 893 and 894 (involving the making, financing, and collecting of extortionate extensions of credit), acts indictable under Title 18, United States Code, Section 1951 (involving extortion), acts indictable under Title 18, United States Code, Section 1955 (involving gambling), acts indictable under Title 18, United States Code, Section 1956 (involving money laundering), acts indictable under Title 18, United States Code, Section 2315 (receipt of stolen property) and acts indictable under Title 21,

23

United States Code, Sections 841 and 846 (involving narcotics trafficking).

57. On or about and between March 1, 1999 and March 18, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH MASSINO, also known as "Joseph Messina," PATRICK DEFILIPPO, also known as "Patty from the Bronx," and JOHN JOSEPH SPIRITO, "also known as Johnny Joe," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno Family, an enterprise engaged in racketeering activity, knowingly and intentionally murdered Gerlando Sciascia, also known as "George from Canada," in violation of New York Penal Law Sections 125.25(1) and 20.00.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

### COUNT TEN
(Conspiracy to Murder in Aid of Racketeering)

58. The allegations contained in paragraphs 1 through 12 and 56 are realleged and incorporated as if fully set forth in this paragraph.

59. On or about and between March 1, 1999 and March 18, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH MASSINO, also known as "Joseph Messina," PATRICK DEFILIPPO, also known as "Patty from the Bronx," and JOHN JOSEPH SPIRITO, also

24

known as "Johnny Joe," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family, an enterprise engaged in racketeering activity, knowingly and intentionally conspired to murder Gerlando Sciascia, also known as "George from Canada," in violation of New York Penal Law Sections 125.25(1) and 105.15.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

## COUNT ELEVEN
(Use of a Firearm During Crime of Violence)

60. On or about March 18, 1999, within the Southern District of New York, the defendant PATRICK DEFILIPPO, also known as "Patty from the Bronx," together with others, did knowingly and intentionally use, carry and discharge a firearm during and in relation to crimes of violence, to wit: the crimes charged in Count Nine and Count Ten, and possess a firearm in furtherance of such crimes.

(Title 18, United States Code, Sections 924(c)(1)(A)(iii), 2 and 3551 et seq.)

## COUNT TWELVE
(Extortionate Collection of Credit - John Doe #6)

61. On or about and between March 2000 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant EMANUEL GUARAGNA, together with others, knowingly and intentionally

25

participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #6.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT THIRTEEN
(Extortionate Collection of Credit - John Doe #7)

62. In or about and between September 2000 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant EMANUEL GUARAGNA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #7.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT FOURTEEN
(Receipt of Stolen Property - Tires)

63. In or about and between December 2000 and January 2001, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant EMANUEL GUARAGNA, together with others, did knowingly and intentionally receive, possess, conceal, store, barter, sell and dispose of goods, wares and merchandise of the value of $5,000 or more, to wit: a truckload of tires, which goods, wares and merchandise crossed a state boundary after being stolen, unlawfully converted

26

and taken, knowing the same to have been stolen, unlawfully converted and taken.

(Title 18, United States Code, Sections 2315, 2 and 3551 et seq.)

## COUNT FIFTEEN
(Extortionate Extension of Credit)

64. In or about and between January 2001 and January 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN JOSEPH SPIRITO, also known as "Johnny Joe," together with others, knowingly and intentionally made extortionate extensions of credit.

(Title 18, United States Code, Sections 892(a), 2 and 3551 et seq.)

## COUNT SIXTEEN
(Extortionate Collection of Credit – John Doe #8)

65. In or about and between March 2001 and February 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants EMANUEL GUARAGNA and ANTHONY SIANO, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #8.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT SEVENTEEN
(Felon-in-Possession)

66. On or about February 28, 2002, within the Southern District of New York, the defendant EMMANUEL GUARAGNA, having been previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly and intentionally possess in and affecting commerce ammunition, to wit: six .38 caliber rounds.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 3551 et seq.)

## COUNT EIGHTEEN
(Felon-in-Possession)

67. On or about February 28, 2002, within the Southern District of New York, the defendant JOHN JOSEPH SPIRITO, also known as "Johnny Joe," having been previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did

knowingly and intentionally possess in and affecting commerce ammunition, to wit: fifty .380 caliber rounds, fifteen .380 caliber hollow point rounds and thirty-nine 9mm caliber rounds.

(Title 18, United States Code, Sections 922(g)(1), 924(e) and 3551 et seq.)

A TRUE BILL

_____
FOREPERSON

_____
ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES EASTERN COURT

EASTERN ____ District of ____ NEW YORK ____

____ CRIMINAL ____ Division

## THE UNITED STATES OF AMERICA

*vs.*

JOSEPH MASSINO, et al.

## INDICTMENT

Cr. No. 03 Cr. 0929 (S-2) (NGG)
(T. 18, U.S.C. §§ 371, 892(a), 894(a)
(1), 922(g)(1), 924(a)(2), 924(c)(1)(A)
(iii), 924(e), 1955, 1959(a)(1), 1959(a)
(5), 1962(d), 1963, 2315, 2 and 3551
et seq.)

*A true bill.*

_____
*Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 19* _____

_____
*Clerk*

*Bail, $* _____

GREG ANDRES, AUSA (718) 254-6273