GDA: WYC
F.#2003R01783

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                  Cr. No. 03-929 (S-3)(NGG)

VINCENT BASCIANO, et al.,

           Defendants.

- - - - - - - - - - - - - - - - -X

# MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York
One Pierrepont Plaza
Brooklyn, New York  11201

Greg D. Andres
Winston Y. Chan
Assistant U.S. Attorneys
Christopher M. Chaisson
Special Assistant U.S. Attorney
(Of Counsel)

### PRELIMINARY STATEMENT

The government hereby moves to empanel an anonymous and partially sequestered jury for the trial in United States v. Basciano, 03 Cr. 929 (NGG).  In particular, the government requests: (a) that the identities of all prospective jurors, including names, addresses and places of employment, not be revealed to either the parties or their attorneys; and (b) that from the time each juror is empaneled until the conclusion of the trial, the jurors be escorted by representatives of the United States Marshals Service to and from the courthouse each day and at all times during recesses.

As set forth below, empaneling an anonymous and partially sequestered jury is necessary to ensure the public's right to a fair trial by protecting the jury from interference from the defendants, their criminal associates, the media and others.  Moreover, these precautions will not deprive the defendants of their right to meaningful jury selection nor diminish the presumption of innocence.

# I.  **Factual Background**

## A.  **Indictment & Charges**

Since August 2003, grand juries sitting in the Eastern District of New York have returned a series of indictments charging defendants with racketeering conspiracy, which includes the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family") as the charged enterprise and a pattern of racketeering activity which includes acts of violence, including murder, murder conspiracy, attempted murder and solicitation to murder.  To date, nine defendants have been charged:  Joseph Massino, Vincent Basciano, Patrick DeFilippo, Anthony Donato, Anthony Frascone, Emmanuel Guaragna, John Joseph Spirito, Anthony Siano and Russell Trucco.

Six defendants have resolved the charges against them by guilty pleas.  Three defendants remain: Bonanno family boss Vincent Basciano, Bonanno family captain Patrick DeFilippo and Bonanno family soldier Anthony Donato.  All three are scheduled for trial in January 2006.  Each is charged with racketeering conspiracy which includes at least one act of murder, murder conspiracy, solicitation to murder and/or attempted murder.

Specifically, the remaining defendants are charged as follows:

- **Vincent Basciano:** The defendant Basciano is charged in the following two counts: racketeering conspiracy and illegal gambling. In the Count One racketeering conspiracy, the defendant Basciano is charged in the following seven racketeering acts: illegal gambling – policy operation, illegal gambling – joker poker machines, attempted murder of John Doe #1, arson/arson conspiracy, conspiracy to murder/attempted murder of John Doe #2, conspiracy to murder/murder and solicitation to murder.

- **Patrick DeFilippo:** The defendant DeFilippo is charged in the following ten counts: racketeering conspiracy, illegal gambling – joker poker machines, illegal gambling conspiracy – bookmaking, illegal gambling – bookmaking, extortionate collection of credit conspiracy, extortionate collection of credit – John Doe #3, extortionate collection of credit – John Doe #5, murder in-aid-of racketeering, murder in-aid-of racketeering conspiracy and use of a firearm during a crime of violence. In the Count One racketeering conspiracy, the defendant DeFilippo is charged in the following seven racketeering acts: illegal gambling – joker poker machines, attempted murder of John Doe #1, illegal gambling – bookmaking, extortionate collection of credit conspiracy, extortionate collection of credit – John Doe #3, extortionate collection of credit – John Doe #5 and murder/murder conspiracy.

- **Anthony Donato:** The defendant Donato is charged in the following two counts: racketeering conspiracy and illegal gambling – joker poker machines. In the Count One racketeering conspiracy, the defendant Donato is charged in the following three racketeering acts: illegal gambling – policy operation, illegal gambling – joker poker machines and attempted murder of John Doe #1.

**B.** **History Of The Bonanno Family**

A brief history of the Bonanno family and its involvement in acts of violence provides important context to this motion. The Bonanno family, in its more than seventy-year history, has engaged in countless acts of violence, including dozens of murders, murder conspiracies and/or attempted murders, loansharking, extortion, arson, robbery and obstruction of justice.[1] Made members of the Bonanno family, including the defendants Basciano, DeFilippo and Donato, take an oath of allegiance to the enterprise, agreeing to commit acts of violence, including murder, when called upon to do so. (<u>See</u> <u>Massino</u> Trial, 281 (Testimony of Organized Crime Expert Kenneth McCabe)("Q. If you are given an order to commit a murder, are you obligated to do so? A. Absolutely. Q. What's the penalty if you fail to do so? A. Death."); (<u>id.</u> at 3751-3752)(Testimony of Bonanno family soldier Joseph D'Amico)("Q. Are there rules about crimes of violence? A. No; I don't think so. Q. Are there rules about whether if you are given an order to commit a crime of violence, are there rules about whether you can accept that order

---

[1] For example, a cooperating witnesses has informed the government that an individual in the jury pool in <u>United States v. Massino</u>, 02 Cr. 307 (NGG), "reached out" for a member of the Bonanno family (a relative of Bonanno family acting underboss Joseph Cammarano) to inform him of his involvement in the <u>Massino</u> proceedings. This apparent effort to tamper with the jury was thwarted, however, because the individual in the jury pool was not ultimately selected to the petit jury.

or not?  A. There is no appeal system there.  You get the rule, you gotta do it, I mean, you get the order, you do it.  Q. If you disobeyed an order to commit a crime of violence, do you know what the penalty would be?  A. Yes.  Q. What are the possible penalties?  A. You could be shelved or killed.”); (id. at 5455) (Testimony of Bonanno family underboss Salvatore Vitale)(“Q. If the boss of an organized crime family gets or a gives an order can it be disobeyed?  A. No.  Q. Does anyone have a choice as to what orders to follow?  A. No.  Q. Is there a vote as to what orders to follow?  A. No vote.  Q. What is the penalty if you disobey an order from the boss?  A. You could be killed.”).

Further, by now, it is a well-established tenant of the Bonanno family that the enterprise prohibits cooperation with law enforcement and at times, punishes those who do so by death. (See Massino Trial Transcript, 284 (Testimony of Organized Crime Expert Kenneth McCabe)(“Q. Is there a rule within La Cosa Nostra about cooperation with law enforcement?  A. Yes.  You die if you cooperate.”).  The government’s recent and ongoing investigation in the Bonanno family has produced devastating evidence of both the Bonanno family’s violent nature and its’ policy toward cooperation with law enforcement.  For example, in September 2003, during a Bonanno family administration meeting, then Bonanno family acting boss and acting consigliere Anthony Urso, in graphic terms, spoke of killing a cooperating witness or the

5

family member of a cooperating witness.  At the time, Urso was the highest ranking member of the Bonanno family at liberty. Urso stated, in substance:

> you gotta throw somebody in the streets –
> this has got to stop.  Fuck it, he can do it,
> I can do it.  This is how they should have
> played, and they might have done this before,
> you turned, we wipe your family out . . . why
> should the rats' kids be happy, where my kids
> or your kids should suffer because I'm away
> for life.  If you take one kid, I hate to say
> it, and do what you gotta do, they'll fuckin
> think twice.

Urso's comments exemplify the current chaos that reigns in the Bonanno family and to what lengths it will go in order to preserve the enterprise.

That members and associates of the Bonanno family engage in acts of violence against suspected cooperating witnesses cannot be dismissed as merely "tough talk."  To date, the government has established, during the various related proceedings in the Eastern District of New York, the involvement of members and associates of the Bonanno family in actual acts of violence against suspected cooperating witnesses, including the 1981 murder of Bonanno family captain Dominick Napolitano, the 1982 murder of Bonanno family soldier Anthony Mirra, the 1987 murder of Bonanno family captain Gabriel Infanti and the 1992 Bonanno family associate Robert Perrino.  Napolitano, Mirra, Infanti and Perrino were all murdered, in part, due to the mere suspicion that each was cooperating with the government.

**C.  Specific Acts Of Obstruction**

In addition to the evidence complied to date with respect to obstruction of justice and other acts of violence committed by members of the charged enterprise, the government has also obtained evidence with respect to acts of obstruction of justice with respect to the charged defendants.  This information is detailed below.

**1.  Attempted Murder Of David Nunez**

At trial, the government will prove that with respect to the attempted murder of David Nunez, individuals associated with the Bonanno family attempted to identify witnesses to this shooting and, at a later date, succeeded in compromising the testimony of the victim, David Nunez.  Each of the remaining three defendants, Vincent Basciano, Patrick DeFilippo and Anthony Donato, are charged with the attempted murder of Nunez in racketeering act three.  At trial the government will prove that on November 14, 1985, the defendant Basciano, together with DeFilippo and Donato, were involved in the attempted murder of Nunez, who was shot as he exited a cab in front of a gambling location in the Bronx.

### 2. Conspiracy/Solicitation To Murder Family Member Of Cooperating Witnesses

The government has also obtained evidence that the defendant Basciano sought permission to murder family members of cooperating witnesses who testified at the trial of Bonanno family boss Joseph Massino. In particular, the defendant Basciano sought permission from Bonanno family boss Joseph Massino to murder Joseph Lino, the son of Bonanno family captain Frank Lino, Frank Coppa, Jr., the son of Bonanno family captain Frank Coppa, and the parents of Bonanno family soldier (and acting captain) Joseph D'Amico. Frank Lino, Frank Coppa and Joseph D'Amico all testified at the <u>Massino</u> trial.

Basciano's commitment to violence – specifically murder – and his ability and willingness to commit these acts of violence – are confirmed by his own admissions during a consensually recorded conversation on December 21, 2003. During that meeting, Basciano repeatedly discussed the importance of having "shooters" to do "work," a reference to murder. Basciano even bragged that he had several shooters available to him as well as the authority and the ability to commit murder at will. Basciano stated, in substance:

> Anything that I gotta do, personally, I don't feel I have to tell anybody. Okay? If it justifies it and I went to [then Bonanno family acting boss] Tony [Green], for the sake of conversation and say, 'Tony, listen to me. I gotta problem with somebody' and, he has enough faith in me. And he knows I'm

gonna tell the truth.  And I'm not clipping a
Friend [made member], and a guy is not
related to any Friends and I give you a
circumstances, I don't wanna mention
anybody's name.  I don't need anybody that
anybody gives me.  I got my own guys.  I do
it myself it falls on me. . . . You know?
And all this and, and, and, all the guys that
are gonna do the work, I'm not gonna tax.
Like I told Tony, at Christmas time, I'm not
taxing guys that are doing the work.  Let all
the fucking earners put up all the fucking
money.[2]

Later, Basciano again spoke about committing murder,

stating:

somebody like Tony [Urso] comes and says
listen to me, I want to do this, what
happened Bo, there's gonna be a situation
with this guy over here I think we should
take care of him.  Tony, is this guy related
to a Friend?  No.  Do you know what you're

_____

[2]    During his testimony at the <u>Massino</u> trial, Bonanno
family captain James Tartaglione testified about Basciano's
reference to "earners" and "shooters" as follows:

Q.    Thank you.  At the bottom of the page, who speaks when
      they say:  "You're an earner, you know there's shooters
      and  earners."  Who is speaking there?

A.    Gorgeous Vinny.

Q.    And what are shooters and earners?

A.    What we just went over.  There's people that go out
      there, just have a knack for earning money.  They know
      how to put businesses together, and they are just good
      at what they do, as far as business.  Then you got
      those tough guys that could go out and kill somebody
      and do whatever they have to do.

The defendant Basciano's mention of a "friend" refers to a made
member of an LCN organized crime family.

doing?  It's not personal?  No.  Let him do
it, we don't want to know who.

As for his commitment to organized crime, the Bonanno
family and Bonanno family boss Joseph Massino, Basciano
repeatedly expressed his intention to continue with the Bonanno
family and to be loyal to Massino.  In response to the suggestion
that the cooperation of various made members of the Bonanno
family may lead to the arrest of fifty to hundred defendants,
Basciano stated:

> What, what, what we still have to do, and I
> know we have his [Massino's] blessings (UI)
> and the other guy's a thousand percent (UI)
> we got to keep going on. . . . We gotta keep
> straightening out guys.  We gotta keep
> straightening out guys.[3]

---

[3]  The term to "straighten out" an individual is a
reference to the induction of members into an LCN organized crime
family.  During his testimony at the Massino trial, Bonanno
family captain James Tartaglione explained this term in the
following exchange:

> Q.  Turn to page 45.  Vinny says, towards the bottom: 'What
> we still have to do, and I know we have his blessings,
> and the other guys, a thousand percent, we got to keep
> going on.'  Who is he referring to there?
>
> A.  Joe Massino.
>
> Q.  He says: 'We got to keep straightening out guys.'  What
> does he mean by straightening out guys?
>
> A.  When they propose a man in the family, and they turn
> around and they take a list and they send it to the
> other families to see if there's any beefs or gripes
> against that person that they are proposing.

Further, that Basciano refers to Massino as "him" or "that guy"
was consistent with the rule in the Bonanno/Massino family that

That Basciano is incarcerated does little to limit his ability to perpetrate acts of violence, as the government has obtained evidence from cooperating witnesses that members of the Bonanno family, including Basciano, have repeatedly succeeded in sending messages from prison to the "street."

## II.  ARGUMENT

Below is a recitation of the applicable law pertaining to the empanelment of an anonymous and partially sequestered jury, as well as the application of this standard to the case at bar.

### A.  Anonymity Is A Well-Established Means Of Ensuring The Impartiality Of A Jury

#### 1.  Legal Standard

The Second Circuit has long recognized that anonymous juries are often necessary to protect the integrity of trials and ensure an impartial jury.  See, e.g., United States v. Amuso, 21 F.3d 1251, 1264-65 (2d Cir. 1994)(upholding decision to empanel anonymous jury in racketeering, tax fraud and conspiracy trial of boss of Luchese crime family because he was "responsible for

---

members were to avoid referring to Massino by name to avoid having his name recorded during wiretap investigations or consensual recordings.  There was repeated testimony at the Massino trial that members of the Bonanno family were instructed to refer to Massino by touching their ear.

crimes of extreme violence and, at the same time, was the head of a powerful crime organization"); United States v. Locascio, 6 F.3d 924, 946-47 (2d Cir. 1993)(upholding decision to empanel anonymous jury in RICO and murder trial of boss and underboss of Gambino crime family based, in part, on "the government's evidence of previous instances of jury tampering by [Gambino boss John] Gotti and his associates"); United States v. Persico, 832 F.2d 705, 717 (2d Cir. 1987)(upholding decision to empanel anonymous jury in racketeering and bribery trial of Alphonse "Allie Boy" Persico, "a trusted adviser and an initiate member of the [Colombo crime] Family" based on "the violent acts alleged to have been committed in the normal course of Colombo Family business, the Family's willingness to corrupt and obstruct the criminal justice system, and the extensive publicity" generated by the case).[4]

To that end, the Second Circuit has adopted a two-step process for determining whether or not to empanel an anonymous jury. Under this analysis, a district court should first determine whether there is strong reason to believe that the jury needs protection. If there is, the court should then take

---

[4] In United States v. Massino, 02 CR 307 (NGG), under similar circumstances, this Court granted the very relief requested here, the empanelment of an anonymous and partially sequestered jury. At the time of his trial, Massino, like Basciano, was the official boss of the Bonanno family who was charged with acts of violence, including murder.

reasonable precautions to minimize any prejudice that an anonymous jury might entail. See United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994); United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); United States v. Barnes, 604 F.2d 121, 141 (2d Cir. 1979). Within those general parameters, the decision to use an anonymous jury is left to the sound discretion of the trial court. See United States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994); Paccione, 949 F.2d. at 1192; United States v. Maldonado-Rivera, 922 F.2d 934, 971 (2d Cir. 1990).

The Second Circuit has identified five factors that are relevant to a court's determination as to the propriety of empaneling an anonymous jury: (1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the jury, either himself or through a criminal organization of which he is a member; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that might impair their ability to be fair. See United States Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995); Thai, 29 F.3d at 801; Paccione, 949 F.2d at 1192-93; United States v. Vario, 943 F.2d 236, 240 (2d Cir. 1991); United States v. Tutino, 883 F.2d 1125, 1132 (2d Cir. 1989); Persico, 832 F.2d at 717.

Applying these five factors, the Second Circuit has repeatedly approved the use of anonymous juries in cases involving defendants with ties to organized crime. See, e.g., Amuso, 21 F.3d at 1264-65; Locascio, 6 F.3d at 946-47; Vario, 943 F.2d at 240; Persico, 832 F.2d at 717. The Second Circuit has emphasized, however, that the mere fact that a case involves organized crime does not, by itself, justify use of an anonymous jury unless there is "something more." Vario, 943 F.2d at 241. "This 'something more' can be a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendant and his associates such as would cause a juror to reasonably fear for his own safety." Id.

Following Vario, courts in the Eastern District of New York have frequently empaneled anonymous and partially sequestered juries in organized crime cases. See, e.g., United States v. Massino, No. 03 CR 307 (NGG)(E.D.N.Y)(empaneling anonymous and partially sequestered jury in trial of Bonanno family boss); United States v. Spero, No. 99 CR 520 (ERK)(empaneling anonymous and partially sequestered jury in trial of Bonanno family consigliere and one-time acting boss); United States v. Orena, No. 93 CR 1366 (ERK)(E.D.N.Y.)(empaneling anonymous and partially sequestered jury in trial of Colombo

family members); <u>United States v. Malpeso</u>, No. 93 CR 1365
(RJD)(E.D.N.Y.)(same); <u>United States v. Legrano</u>, No. 93 CR 1231
(ARR)(E.D.N.Y.)(empaneling anonymous and partially sequestered
jury in trial of Colombo family members); <u>United States v.</u>
<u>Cutolo</u>, No. 93 CR 1230 (EHN)(E.D.N.Y.)(same); <u>United States v.</u>
<u>Bisaccia</u>, No. 93 CR 479 (ILG)(E.D.N.Y.)(empaneling anonymous and
partially sequestered jury in trial of Gambino family member and
associate); <u>United States v. Persico</u>, No. 92 CR 351
(CPS)(E.D.N.Y.) (empaneling anonymous and partially sequestered
jury in two trials of Colombo family members); <u>United States v.</u>
<u>Orena</u>, No. 92 CR 351 (JBW)(E.D.N.Y.)(empaneling partially
anonymous and partially sequestered jury in trial of Colombo
family members).

    As recently as February 2005, a court in this district
ordered an anonymous and partially sequestered jury in a trial of
defendants associated with organized crime.  <u>See</u> <u>United States v.</u>
<u>Locascio</u>, 357 F. Supp. 2d 558 (E.D.N.Y. 2005)(Amon, D.J.); <u>see</u>
<u>also</u> <u>United States v. Cacace</u>, 321 F. Supp. 2d 532, 535 (E.D.N.Y.
2004)(Johnson, D.J.)(finding anonymous and partially sequestered
jury appropriate in trial of Colombo crime family acting boss
because defendant "would have the means to interfere with the
judicial process" due to his position and "the Colombo Family's
reputation of utilizing bribery, obstructing justice and jury
tampering to elude convictions").

### 2.   The Current Prosecution Merits
### Empaneling An Anonymous Jury

Employing the standards set forth above, it is clear that the interests of justice would best be served by protecting the identity of the members of the jury in the instant case.  The present superseding indictment charges the defendants with engaging in a racketeering conspiracy that includes two murders/murder conspiracies, two attempted murders and one murder solicitation, as well as other violent acts, including loansharking, thereby satisfying the Second Circuit's first factor.

With respect to the second through fourth factors, which collectively address the potential threat of corruption of the judicial process, the defendants and the criminal organization of which they are members have demonstrated a commitment to violence in order to achieve their objectives. Clearly the charges, which include multiple acts of murder, murder conspiracy, attempted murder and solicitation to murder, are serious; some carry the possibility of life imprisonment and thus are among the most serious in the criminal justice system. Similarly, there can be no question that the defendants are "dangerous" given their rank and association with a violent criminal enterprise which readily employs violence.  As noted above, the defendant Basciano repeatedly discussed his ability to commit murder at will during a consensually recorded meeting on

December 21, 2003.  Further, beyond the multiple murders alleged in the indictment in this case, as noted above, the government has obtained information that individuals associated with the Bonanno family attempted to interfere with the investigation relating to the attempted murder of David Nunez, charged in racketeering act three.

Finally, with respect to the fifth factor, media attention, this factor also favors an anonymous panel.  There have been numerous press accounts relating to this case in the local print media, including the *New York Times*, *New York Daily News*, *New York Post* and *Newsday*, as well as local radio and television coverage.  Further, as with the <u>Massino</u> trial, press coverage will only intensify as the case proceeds to trial.  As noted by the Second Circuit, publicity can "enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies or harassment by the public."  <u>See</u> <u>Vario</u>, 943 F.2d at 240.  In well-publicized criminal cases throughout the country, jurors have been subject to significant press attention and pressure.  While most members of the press would likely respect a court admonition not to communicate with a sitting juror, such an order would not prevent the press from attempting to interview jurors' family members, friends, neighbors and co-workers.  Even if none of this were to come to pass, jurors who are not anonymous may reasonably

17

fear that they will become targets for the press either during the trial or after the trial is over.

In light of public scrutiny, jurors may feel compelled to return a particular verdict if their identities are not kept confidential. Simply put, a juror whose identity has become known may no longer feel free to cast his or her vote based solely on the evidence. See United States v. Barnes, 604 F.2d 121, 140 (2d Cir. 1979). In contrast, use of an anonymous jury will ensure that jurors return a verdict based solely on the evidence presented at trial, and not out of fear that they will be subject to public scrutiny from the press or from relatives, friends, neighbors or co-workers because of their verdict.

**B. The Use Of Anonymous And Partially Sequestered Jury Will Not Deprive The Defendants Of Meaningful Jury Selection Or Diminish The Presumption Of Innocence**

Once a district court determines that there is strong reason to believe that the jury needs protection, it may empanel an anonymous jury provided that it takes reasonable precautions to minimize any potential prejudice therefrom. See Thai, 29 F.3d at 801; Amuso, 21 F.3d at 1264-65; Paccione, 949 F.2d at 1192; Vario, 943 F.2d at 239; Tutino, 883 F.2d at 1132; Persico, 832 F.2d at 717-18; United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985). A defendant has two legitimate concerns that are potentially affected by a decision to empanel an anonymous jury: (1) the right to make informed choices during the jury selection

18

process, and (2) the right to be tried by jurors who are not prejudiced by reason of their anonymity.  Both of these concerns can be readily addressed.

> **1.  Empaneling An Anonymous Jury Does Not Burden The Defendants' Ability To Make Informed Choices During Jury Selection**

Although a defendant has the right to a meaningful <u>voir dire</u> of potential jurors, <u>see</u> <u>Rosales-Lopez v. United States</u>, 451 U.S. 182, 188 (1981), the decision as to the questions to be asked in <u>voir dire</u> largely rests within the informed discretion of the trial judge, <u>see</u> <u>United States v. Silva</u>, 715 F.2d 43, 50 (2d Cir. 1983)(finding that absent clear abuse of discretion, trial court's ruling on questions to be asked will not be disturbed); <u>Barnes</u>, 604 F.2d at 137-40 (finding, "[a]s long as a defendant's substantial rights are protected by a <u>voir dire</u> designed to uncover bias as to issues in the case and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal").  As Judge Glasser has noted, "The jury selection process (<u>voir dire</u>) is not a matter of constitutional dimension and the selection of an anonymous jury was implicitly held to be constitutional in <u>Barnes</u>."  <u>United States v. Gotti</u>, 777 F. Supp. 224, 227 (E.D.N.Y. 1991)(citation omitted).

The information that will be kept from the parties and counsel if this motion is granted is not meaningful to the jury

19

selection process.  The names, addresses and places of employment
of the prospective jurors are not necessary to an informed
choice.  Information regarding the general neighborhoods in which
the prospective jurors live and the general nature of their work
is sufficient.  The names of prospective jurors, to the extent
they provide information about ethnicity, are not relevant to
meaningful <u>voir</u> <u>dire</u>.  <u>See</u> <u>Georgia v. McCollum</u>, 505 U.S. 42
(1992)(applying rule articulated in <u>Batson</u>, prohibiting use of
peremptory challenges in racially discriminatory manner, to
criminal defendants).  The common practice in this district of
extensive voir dire, including the use of a questionnaire and a
jury instruction, further acts to safeguard the rights of the
defendant.

> **2.  The Court Can Explain The Reasons For Anonymity
> And Partial Sequestration To Prospective Jurors
> In Neutral Terms That Will Diminish The Risk Of
> <u>Prejudice To The Defendants</u>**

Numerous courts have recognized that where anonymity is
necessary, the jurors can receive an instruction from the court
explaining security measures in a neutral way to prevent the jury
from drawing any negative inference.  Although the due process
clause of the Fifth Amendment protects the presumption of
innocence, "there is no <u>per</u> <u>se</u> rule that it may not be burdened."
<u>Thomas</u>, 757 F.2d at 1364; <u>see</u> <u>also</u> <u>United States v. Scarfo</u>, 850
F.2d 1015, 1026 (3d Cir. 1988).  Here, the burden is slight

compared to the court's interest in safeguarding the integrity of the judicial process and can be alleviated through a proper jury instruction.

Most commonly, courts have explained to jurors that their privacy and identities need protection from the media and the curious. See, e.g., Thai, 29 F.3d at 801; Amuso, 21 F.3d at 1265; Tutino, 883 F.2d at 1133. In the Crown Heights case, for example, Judge Trager explained the jurors' anonymity by telling prospective jurors that their names, addresses and places of employment would be kept confidential "in order to protect your privacy from press inquiries and others not connected with the case." In the Colombo family cases over which he presided, Judge Weinstein explained the jury's partial anonymity by telling prospective jurors that it would allow them to feel more comfortable in giving candid answers to the personal questions asked in voir dire and in the jury questionnaires. Either of those examples would provide a credible explanation to prospective jurors in this case.

As for partial sequestration, the government proposes that the jury be told that transportation is being provided to protect their privacy and to ensure that the trial can proceed expeditiously. This explanation has been routinely given in cases where transportation to and from court is provided, see, e.g., United States v. Nelson, No. 94 CR 823 (DGT)(E.D.N.Y.);

21

<u>United States v. Orena</u>, No. 93 CR 1366 (ERK)(E.D.N.Y.); <u>United States v. Malpeso</u>, No. 93 CR 1365 (RJD)(E.D.N.Y.); <u>United States v. Cutolo</u>, No. 93 CR 1230 (EHN)(E.D.N.Y.); <u>United States v. Thai</u>, No. 91 CR 838 (CBA)(E.D.N.Y.), and is appropriate in this case.

## **CONCLUSION**

For the reasons set forth above, the government's motion to empanel an anonymous and partially sequestered jury should be granted.

Dated:    Brooklyn, New York
          October 4, 2005

                                    Respectfully submitted,

                                    ROSLYNN R. MAUSKOPF
                                    United States Attorney
                                    Eastern District of New York
                                    147 Pierrepont Street
                                    Brooklyn, New York  11201

Greg D. Andres
Winston Y. Chan
Assistant U.S. Attorneys
Christopher M. Chaisson
Special Assistant U.S. Attorney
     (Of Counsel)