UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

              MEMORANDUM & ORDER

  v.              03-CR-929 (NGG)

VINCENT BASCIANO,

    Defendant.
-----------------------------------------------------------X

GARAUFIS, United States District Judge.

  On January 3, 2006, the court issued a Memorandum & Order ("M&O") granting defendant Vincent Basciano's ("Basciano's") pretrial motion requesting a Wade hearing. (M&O at 13.) In that M&O, I stated that Basciano had met the burden required to receive a hearing examining whether an out-of-court line-up identification in 1985 following the shooting of David Nunez was impermissibly suggestive in violation of Basciano's due process rights. (Id.) Two potentially relevant issues that Basciano had raised were that he was more disheveled and unkempt than the other members of the line-up and that only one of the four stand-ins was of Italian descent, as is Basciano. (Basciano Ltr. Br. dated Dec. 12, 2005.)

  At the Wade hearing on January 18, 2006, the Government rested on a photograph submitted to the court on January 4, 2006 that provides a more sharply focused and detailed portrayal of the line-up, to make the case that the line-up was not suggestive, as Basciano is similar in appearance to several of the stand-ins.[1] (Tr. Proceedings N.G. Garaufis, Jan. 18, 2006

---

[1] The original photograph presented to the court was marked Ex. MK-1 for the purposes of this inquiry and returned to the Government. The Government stated that it planned to so rest at a status conference on January 17, 2006. (Tr. Proceedings N.G. Garaufis, Jan. 17, 2006 ("Tr. Jan. 17, 2006") at 54.) The Wade hearing that was originally scheduled for that day was

1

("Tr. Jan. 18, 2006") at 206-07.)  Basciano presented one witness, Margaret Clemons, an investigator who had recently interviewed David Nunez.  Ms. Clemons testified as to a new ground for suggestibility, that Nunez claims he was shown surveillance photographs of Basciano prior to the line-up.  The court now rules that David Nunez's lineup identification does not violate Basciano's due process rights.

**Analysis**

A Wade hearing is held to prevent the "grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial," United States v. Wade, 388 U.S. 218, 236 (1966).  Before evidence of an out-of-court identification is excluded from trial, however, it must be shown to be not only unduly suggestive, but also unreliable.  As the Second Circuit has explained:

> The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt.  If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification.  In that circumstance, any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility.  If the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures.

United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990) (internal citations omitted).  Under the first prong of this analysis, unduly suggestiveness, there must be a "very substantial likelihood" of misidentification.  Neil v. Biggers, 409 U.S. 188, 198 (1972).  I now examine each of the three grounds raised by Basciano to determine if any were unduly suggestive.

---

adjourned and was held the following day.

1. Disheveled appearance

At the 1985 line-up, Basciano's then-attorney made several objections, including that (1) Basciano had a two-day growth of beard and nobody else seemed to have a two-day growth beard, (2) Basciano had not slept and looked bleary-eyed and nobody else looked bleary-eyed, and (3) Basciano looked disheveled while nobody else looked disheveled. (Tr. Feb. 17, 1987, New York v. Donato, Supreme Ct. of N.Y. ("1987 Wade Tr.") at 54-56.) Presumably, these factors, if true, could have suggested to the witness that Basciano was the only person in the lineup who had spent a night in custody and, therefore, was the one the police thought had perpetrated the crime. On January 4, 2006, the Government turned over the original black and white photograph of the State line-up in 1985. (Ex. M-K 1) Upon examination of this photograph, I find that Basciano does not look any more bleary-eyed, disheveled, or bearded than any of the stand-ins. Basciano has thus failed to meet his burden in proving that his disheveled appearance was suggestive, much less unduly so.

2. Ethnicity

At the line-up in 1985, Basciano's then-attorney also objected that only one of the four stand-ins was of Italian-descent, as is Basciano. Three of the four stand-ins were of Hispanic descent. (1987 Wade Tr. at 54-56.) Upon close examination of the original photograph, it appears to the court that perhaps the first stand-in could be seen as appearing more of Latin American descent than of Italian descent. However, the rest of the line-up is not so distinguishable. One stand-in with a slightly different appearance does not make a line-up suggestive. See, e.g., United States v. Reid, 517 F.2d 953, 966 n.15 (2d Cir. 1975) ("there is no requirement that even in line-ups the accused must be surrounded by persons nearly identical in

3

appearance, however desirable that may be"); William v. Weldon, 826 F.2d 1018, 1021 (11th Cir. 1987) ("simply being of a different race or ethnic group from others placed in a lineup does not necessarily make that lineup impermissibly suggestive, especially where, as here, the other individuals in the lineup had roughly the same characteristics and features as the accused.") The ethnicity is even less of a factor since the court has no evidence to suggest that David Nunez identified the man who shot him as a person of Italian descent.[2] See, e.g., Raheem v. Kelly, 257 F.3d 122, 134 (2001) ("A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator *previously given by the witness* and the other lineup participants obviously do not") (emphasis added); Solomon v. Smith, 645 F.2d 1179, 1183-84 (2d Cir. 1981) (determining suggestibility based on the description provided by the witness, not the features of the defendant). The court finds that the potentially different ethnicity of some of the members of the line-up did not make it unduly suggestive.

3. Surveillance photos

Although not previously briefed as an area of suggestibility, Basciano called an investigator, Margaret Clemons, to testify at the Wade hearing last week that David Nunez told her recently that he was shown surveillance photographs of Basciano prior to the 1985 line-up. According to Clemons' testimony of her interview with Nunez, who is currently serving a prison sentence in New York, Nunez was released from the hospital the day he was shot and, while at home, "he was visited by a detective who further interviewed him and, in addition, he was shown

---

[2] The only evidence the court received of Nunez's description is the one he gave in 1986 to the FBI. The FBI report wrote that Nunez "described the person who shot him as being five feet seven inches to five feet eight inches tall, 140 to 150 pounds, mustache, wearing black pants and sweater." (Wade Hearing Gov't Ex. CC)

photographs." (Tr. Jan. 18, 2006 at 278.) Nunez further told Clemons that these photographs were surveillance photographs with names of the individuals on the bottom and that Basciano was one of the names. (Id.) Clemons also testified to Nunez's admission that the photographs of Basciano that he viewed in his home helped him identify Basciano in a line-up. (Id. at 279.)

The Government submitted evidence that David Nunez is an unreliable witness. This evidence included two prior statements Nunez had given the government (Wade Hearing Gov't Ex. BB, CC), as well as hospital records showing that Nunez was not released from the hospital between the time of his admittance to the hospital and the time he viewed the lineups. (Gov't Ltr Br. dated Jan. 19, 2006.)

Before the court can determine whether such an intervention by the detectives would create a due process violation, it must determine whether there is sufficient proof that Nunez was indeed shown photographs of Basciano prior to the lineup identification. Basciano has submitted evidence in the form of hearsay testimony of Nunez's account, presented by investigator Clemons. The Government, however, has pointed to Nunez inconsistent statements in the past and the fact the chronology of events described by Nunez in the most recent account is not supported by hospital records.

Although, David Nunez was a participant at the line-up and may be the best person to testify as to the procedure leading up to it, the court is troubled by Nunez's widely varying testimony in the past. I have examined the following relevant evidence:

(1) November 1985: Nunez identified Basciano from a line-up, the day following his shooting. (1987 Wade Tr. at 33 (testimony of Police Officer Keith Garley).)

5

(2) December 1985: Nunez was deposed by Basciano's then-attorneys Elias Martinez and Gary Friedman. During that deposition, Nunez said that all he remembered from the shooting was seeing a "man with a moustache." (Basciano Mem. Support Pretrial Mot. ("Basciano Mem.") Ex. D at 5.) He described his state during his identification of Basciano as "a little nervous, and I was still a little in shock, because I had just left the hospital that night. I had been shot in the morning that day." (Id.) He reported that he had told the detectives prior to the lineup that the man who shot him had a moustache. (Id. at 6.) He also reported that he did not know Basciano nor had he "seen him anywhere else." (Id. at 6-7.) Finally, Nunez said he was now positive it was not Basciano who had shot him. ( Id. at 11.)

(3) May 1986: Nunez spoke to FBI Special Agents Howard Mette and Randolph Biddle. He told them that he was shot four times getting out of a taxi on the way to his job at a numbers store. He went on to say, according to the FBI report,

> "when he got out of the hospital, the day after the shooting, and viewed a police line-up, he identified a person as the one who shot him. At a later date, [Nunez] decided he had made a mistake during the line-up as the person he identified did not have a moustache and the man who shot him did. [Nunez] also said that he had never been approached by anyone outside of law enforcement about this investigation."

(Wade Hearing Gov't Ex. CC.)

(4) Recently: Nunez reportedly spoke with investigator Clemons, who was hired by Basciano. Nunez indicated that he was released from the hospital soon after his admittance on November 14, 1985. He was then interviewed at his home by detectives who showed Nunez photographs of Basciano, among others. Nunez reported to Clemons

6

that the photographs at his home helped him identify Basciano at the line-up. (Tr. Jan. 18, 2006 at 277-79.)

This court does not credit Mr. Nunez's most recent account of the lineup. I find it wholly incredible that after all of the inquiries into this matter, Nunez never before mentioned the visit of the detectives to his home or his examination of surveillance photographs. For example, in the account given to Basciano's then-defense counsel in December 1985, Nunez purports that his reason for giving the testimony is that he wants to prevent an innocent man from going to jail. (Basciano Mem. Ex. D at 12.) If that motivation is to be believed, it seems unrealistic that he would decline to mention that he had been influenced by detectives showing him photographs prior to the lineup.[3] If Nunez was shown photographs that helped him pick Basciano out of a lineup, why did he fail to mention it a mere month after the lineup when he was, for whatever reason, coming forward with deposition testimony to undermine his own lineup identification? That such police intervention was not revealed then seriously undercuts the credibility of testimony twenty years later that his identification was motivated by the surveillance photographs. This assessment is bolstered by the fact that he also did not mention the visit by detectives in his interview with FBI in 1987. (See Wade Hearing Gov't Ex. CC.)

Finally, the court is persuaded by the evidence that Nunez's account is not factually possible. Nunez claims that he was visited by detectives bearing photographs after he returned home from the hospital, but before he viewed the lineup. Nonetheless, testimony by a police

---

[3] The alternative motivation suggested by the Government does not change the analysis. The Government's theory is that Nunez offered a recantation only after being tampered with. In that case, Nunez would have still had motivation to present any testimony at all that would help exculpate Basciano.

officer at the 1987 State Wade hearing (unrefuted at that time) stated that he was escorted directly from the hospital to the lineup. (1987 Wade Tr. at 4-6 (testimony of Police Officer Joseph Klun).) Furthermore, the hospital records confirm that testimony by showing that Nunez was admitted to the hospital at 10:30 in the morning of November 14, 1985 and not discharged until 5:00 in the evening of November 15, 1985. (Gov't Ltr Br. dated Jan. 19, 2006.) His current accounting of his time, therefore, is mistaken. If he did not go home, he was not shown surveillance photographs by detectives at his home. Because the court does not have any reliable evidence suggesting that Mr. Nunez was presented with photographs of Basciano prior to the lineup, there is no reason to consider whether it would have been unduly suggestive.

After close examination of all the potentially suggestive factors brought to the court's attention, Mr. Nunez's lineup identification of Basciano is not found to be unduly suggestive. "If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility; no further inquiry by the court is required, and the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury." Raheem v. Kelly, 257 F.3d 122, 133 (2001)

**Conclusion**

For the reasons stated above, the court DENIES Basciano's motion for the exclusion of David Nunez's identification of Basciano from a lineup in 1985.


SO ORDERED.

\_\_\_\_/s/_____
Dated: January 27, 2006              Nicholas G. Garaufis
Brooklyn, N.Y.                       United States District Judge