UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                     MEMORANDUM & ORDER

      v.                                                       03-CR-929 (NGG)

VINCENT BASCIANO, and
PATRICK DEFILIPPO,

               Defendants.
------------------------------------------------------X

GARAUFIS, United States District Judge.

Defendants Vincent Basciano ("Basciano") and Patrick DeFilippo ("DeFilippo") (collectively "Defendants") have moved this court to grant either an acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure or a new trial under Rule 33. Defendants make their challenges on four grounds. First, Defendants contest the jury's findings with respect to count one of the indictment, which charged a RICO conspiracy. Defendants claim that there was insufficient proof of three of the eight racketeering acts – racketeering acts three, seven, and eleven. (See Memorandum of Law in Support of Vincent Basciano's Post-Trial Motions ("Basciano Mem.") at 15-26 (challenging racketeering acts three, seven, and eleven); Post-Trial Memorandum of Law in Support of DeFilippo's Motions ("DeFilippo Mem.") at 4-6 (challenging racketeering act three).) Second, Basciano claims that the court's charge to the jury on the concept of relatedness pertaining to Racketeering Conspiracy was improper. (Basciano Mem. at 35-37.) Third, Basciano contends that venue was not established by a preponderance of the evidence with respect to count two, which charged ownership and supervision of a gambling

1

business involving joker-poker machines. (Basciano Mem. at 27-34.) And fourth, DeFilippo urges that there was insufficient evidence to support his conviction of conspiring to use extortionate means to collect extensions of credit as charged in count five of the indictment and racketeering act seven. (DeFilippo Mem. at 6.) In addition, DeFilippo moves to sever his retrial from that of Basciano. (DeFilippo Mem. at 7-8.) Defendants' motions made pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure are DENIED; DeFilippo's motion to sever is DENIED as moot.

I. BACKGROUND

On August 14, 2003, a grand jury in the Eastern District of New York indicted DeFilippo on charges stemming from his alleged involvement in the Bonanno crime family. On November 18, 2004, a grand jury in the Eastern District of New York returned a superseding indictment charging both DeFilippo and Basciano with racketeering-related charges stemming from their alleged involvement with the Bonanno crime family. They proceeded to trial in January 2006. Basciano and DeFilippo were charged with Racketeering Conspiracy based on eight underlying racketeering acts ("RAs") pertaining to Basciano (RAs 1 to 3, 5, 6, and 11 to 13), and seven underlying racketeering acts pertaining to DeFilippo (RAs 2 to 4, and 7 to 10). On May 9, 2006, the jury returned a partial verdict, convicting Basciano of Racketeering Conspiracy based on three of the racketeering acts: illegal policy or "numbers" gambling (RA 1), ownership and supervision of joker-poker machines (RA 2), and the attempted murder of David Nunez ("Nunez") (RA 3). The jury found three racketeering acts pertaining to loan-sharking not proved (RAs 5, 6, 13), and was unable to reach a verdict on the murder of Frank Santoro ("Santoro") (RA 11) and the solicitation to murder Dominick Martino (RA 12). The jury was unable to reach

2

a verdict on count two of the indictment, charging Basciano's management and ownership of an illegal joker-poker gambling operation.  The jury convicted DeFilippo of Racketeering Conspiracy based on four racketeering acts: ownership and supervision of joker-poker machines (RA 2), the attempted murder of Nunez (RA 3), illegal bookmaking (RA 4), and the conspiracy to collect extensions of credit through extortionate means (RA 7).  The jury was unable to reach a verdict on the racketeering act pertaining to the murder of Gerlando Sciascia (RA 10).  DeFilippo was also convicted of counts two through four, pertaining to illegal gambling, and count five, conspiring to collect extensions of credit through extortionate means.  He was acquitted of counts 6 and 7, which charged Extortionate Extensions of Credit, and the jury was unable to reach a verdict on counts eight through ten, which pertained to the murder of Gerlando Sciascia.

DeFilippo filed a post-trial motion on September 21, 2006, in which he argued that the evidence was insufficient to prove that the Nunez attempted murder was sufficiently related to the Bonanno crime family enterprise, or, in the alternative, insufficient to establish that DeFilippo knew that it was related to the affairs of the Bonanno crime family enterprise. (DeFilippo Mem. at 4-6.)  DeFilippo also moved to sever his retrial from that of Basciano. (DeFilippo Mem. at 7-8.)

On September 22, 2006, Basciano filed a post-trial motion in which he argued that there was insufficient evidence to demonstrate that the Nunez attempted murder and the Santoro murder were related both to the enterprise and to each of the other racketeering acts.  (Basciano Mem. at 15-26.)  He further claimed that the Court's charge to the jury regarding the RICO count was improper, and that the Government did not establish venue for count two.  (Basciano Mem. at 27-33, 35-37.)

3

## II. STANDARD OF REVIEW

A. Rule 29

The defendant "bears a heavy burden" on a Rule 29 claim as the court "must credit every inference that the jury may have drawn in favor of the government." United States v. Finley, 245 F.3d 199, 202-3 (2d Cir. 2001) (internal quotation and citation omitted). "The jury's verdict must be sustained, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. Where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). In short, as the Second Circuit has put it: "[T]he court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotation and citation omitted).

B. Rule 33

Federal Rule of Criminal Procedure 33 provides that "upon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 1997). The Second Circuit has stated that a district court should exercise such authority only "in the most extraordinary circumstances." United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993). "Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to

4

grant a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) (internal citation omitted).

## III. DISCUSSION

### A. Defendants' Convictions for the RICO Enterprise and Related Acts

Defendants contend that there was insufficient evidence to demonstrate interrelatedness of charged racketeering acts to establish racketeering conspiracy as charged in count one in the indictment. Defendants seek relief under either Rule 29 or Rule 33 of the Federal Rules of Criminal Procedure. Additionally, Basciano urges this Court to grant a new trial pursuant to Rule 33, claiming that I improperly instructed the jury on the relatedness requirement. Both inquiries require a preliminary analysis of the RICO statute at issue.

RICO § 1962(c) makes it unlawful, in pertinent part,

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 U.S.C. § 1962(c). Section 1962(d) makes it unlawful to conspire to violate § 1962(c). A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). An act can be in the conduct of the enterprise's affairs in one of two ways: (1) the act is related to the activities of the enterprise, or (2) the defendant was able to commit the act solely because of his position in the enterprise. United States v. Bruno, 383 F.3d 65, 84 (2d Cir. 2004).

In Indelicato, the Second Circuit noted that demonstrating two acts of racketeering activity, in and of itself, was insufficient to constitute a "pattern." United States v. Indelicato,

865 F.2d 1370, 1382 (2d Cir. 1989). In addition to showing that the acts are related to the enterprise, the Court found that a "pattern" requires an "interrelation between acts." Id.

In analyzing the RICO statute, the Supreme Court specifically noted that it is to be "read broadly," both because of the "expansive language" Congress used in drafting the statute, as well as Congress's "express admonition" that RICO be "liberally construed to effectuate its remedial purposes." Sedima, SPRL v. Imrex Co., 473 U.S. 479, 497-98 (1985) (internal quotations omitted). In keeping with congressional intent, the Second Circuit has defined the interrelation requirement broadly, finding that it "may be established in a number of ways," including by showing that the racketeering acts had "the same or similar purposes, results, participants, victims, or methods of commission." Id. (internal quotations omitted). Moreover, the Court explicitly noted that none of these attributes are determinative, since "relatedness could be shown in other ways even if each of the listed similarities was lacking." Id. In some cases, relatedness "may be proven through the nature of the RICO enterprise," and, in fact, racketeering acts which are "not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise." Id. at 1383.

"To the extent, therefore, that the relationship between acts necessary to establish a pattern depends on the relationships between individual acts and the enterprise, there will often be some overlap of proof and analysis. The degree of overlap will vary depending in part on the substantive RICO subsection at issue." Indelicato 865 F.2d at 1384. Where a defendant is charged with a violation of subsection (c), the proof "will often entail overlap, for each act of racketeering activity will be related to the enterprise since the latter's affairs are by hypothesis conducted through a pattern of such acts." Id.

6

In interpreting the pattern requirement, the Second Circuit noted that its main concern was "to prevent the application of RICO to the perpetrators of 'isolated' or 'sporadic' criminal acts." Id. (quoting Sun Savings & Loan Ass'n v. Dierdorff, 825 F.2d 187, 192 (9th Cir. 1987)); see also Sedima, 473 U.S. at 496, n.14.

1. **Defendants' Rule 29 Motion for Judgment of Acquittal**

    a. The Nunez Attempted Murder

Defendants were both found guilty of RICO conspiracy based on racketeering act 3, which charged the attempted murder of Nunez. Basciano now moves this Court to overturn the jury's verdict with respect to that racketeering act on the basis that the government failed to produce evidence sufficient to show the act's relationship to the enterprise. (Basciano Mem. at 15-26.) DeFilippo claims that the evidence did not sufficiently prove that he knew that the attempted murder was committed on behalf of the enterprise. (See DeFilippo Mem. at 4.) The Government argues that the relationship between act and enterprise was adequately shown by evidence that the Nunez attempted murder was motivated by competition between Nunez's gambling business and the Bonanno crime family's gambling businesses. (Government's Memorandum of Law in Opposition ("Gov. Mem.") at 15-22.)

At trial, the Government presented evidence that the Bonanno crime family controlled much of the illegal gambling industry in the Bronx. (Tr. at 7936-37.) Basciano, a member of the Bonanno crime family, ran several policy gambling locations along with Anthony Colangelo, Sr. ("Colangelo, Sr."), a Bonanno crime family associate. (Tr. at 7949, 8118-22.) In addition, Basciano and DeFilippo partnered together in at least one illegal gambling business. (Tr. at 4732). Anthony Colangelo, Jr. ("Colangelo, Jr.") worked with his father in policy gambling, and

7

would pick up money from their illegal gambling business and deliver it to either Colangelo, Sr.'s wife, or DeFilippo. (Tr. at 8125-26.)

David Nunez, the victim, had several of his own policy businesses in the Bronx which were "monster stores" and "extremely profitable." (Tr. at 7949.) Anthony Bottone ("Bottone"), who worked with Basciano in the illegal gambling industry, testified that a dispute arose between Nunez and Basciano in the early 1980s. (Tr. at 7929, 7955). As a result of this "beef," Basciano and others plotted to kill Nunez. (Tr. at 7955-56.) Specifically, Basciano obtained information that Nunez took a car service every day at specified times, and arranged with individuals at the car service to intercept Nunez's car. (Tr. at 7955-56.) Then, Basciano, with the assistance of DeFilippo and Donato, shot Nunez in the car. (Tr. at 5681, 5718-20.) Nunez ultimately survived; he "dropped the charges" related to the shooting due to a "sit-down" involving the Bonanno administration which resulted in "everything [being] squashed." (Tr. at 7955-56.) There was also testimony that organized crime members, including Basciano, used violence to resolve disputes and eliminate competition relating to gambling operations. (Tr. at 5750, 5775.)

Neither Basciano nor DeFilippo challenge the sufficiency of the evidence proving their guilt of the charged conduct. Rather, they contend that the evidence was insufficient to establish relatedness between the attempted murder and the Bonanno crime family enterprise. Specifically, Basciano claims that there was no explicit testimony that the "beef" between Basciano and Nunez "related to the numbers business." (Basciano Mem. at 19.) Motive, however, is not a determinative factor of interrelatedness. See, e.g., United States v. Irizarry, 341 F.3d 273, 304 (2d Cir. 2003). Rather, the jury need simply to have found that the attempted murder was related to the affairs of the enterprise. See Bruno, 383 F.3d at 84. Despite

8

Defendants' contention that the Government failed to sufficiently prove this relationship (see Basciano Mem. at 15-26; DeFilippo Mem. at 4-6), I find that the jury's verdict was clearly supported by the evidence.

The Government presented evidence that Nunez had several of his own numbers businesses in the same vicinity of the Bonanno businesses, and that Nunez's businesses were immensely successful. There was also evidence that there was a "beef" between Basciano and Nunez, and that as a result of this disagreement, Basciano, DeFilippo, and a third Bonanno crime family member shot Nunez with the help of a member of another organized crime family. Finally, there was proof that there was a "sit-down" involving the Bonanno crime family administration after the attempted murder. Drawing every inference in favor of the Government, it was certainly reasonable for the jury to conclude that Nunez's business was in competition with the organized crime family gambling locations, that this tension constituted the "beef" between Basciano and Nunez, and that both Basciano and DeFilippo shot Nunez in furtherance of the Bonanno crime family enterprise's gambling businesses.

Basciano nevertheless asserts that these inferences are controverted by the testimony of Bottone, who testified that: (1) Nunez's illegal gambling locations remained open after the shooting; (2) there were others who owned competing gambling locations who were not physically threatened or harmed; and, (3) that it was Bottone, and not any member of the Bonanno crime family enterprise, who ultimately assumed control over Nunez's stores. (Reply Memorandum of Law in Support of Basciano's Post-Trial Motions ("Basciano Reply Mem.") at 5-6.) Notably, though, on review under Rule 29, this Court "must credit every inference that the jury may have drawn in favor of the government." Finley 245 F.3d at 202-03 (emphasis added).

9

Basciano's argument demonstrates merely that there may be competing reasonable inferences to be drawn from all of the evidence. This does not, however, undermine the reasonableness of the inference drawn in favor of the Government, that the attempted murder was perpetrated as a result of a dispute over competing illegal gambling businesses.

Basciano next challenges the sufficiency of the evidence demonstrating that Basciano's gambling facilities were part of the Bonanno crime family enterprise. (Basciano Reply Mem. at 7-12.) The jury heard evidence, however, that the Bonanno crime family enterprise controlled numerous gambling locations in the Bronx, that Basciano was associated with the Bonanno crime family at the time, and, inter alia, that he operated several such facilities with other made members and associates of the Bonanno crime family. Certainly, then, it was reasonable for the jury to infer that Basciano operated the illegal gambling facilities in furtherance of the Bonanno crime family enterprise.

DeFilippo's argument that a reasonable juror could not have concluded that he knew the shooting was related to the enterprise similarly fails. (See DeFilippo Mem. at 4.) Given his close association with the Bonanno crime family enterprise, evidence that he was both a partner with Basciano in illegal gambling and a recipient of profits from the illegal policy operation, and his conspiracy and participation with other members of that policy operation in the shooting, it was certainly reasonable for the jury to have inferred that DeFilippo knew that the shooting related to the affairs of the Bonanno crime family enterprise.

      b.      The Santoro Murder

Basciano now contends that although the jury was unable to reach a verdict on this racketeering act, it should be dismissed from the indictment because the Government failed to

show that the murder of Santoro was related to the Bonanno crime family enterprise at trial. (Basciano Mem. at 21-22.) The Government argues that Basciano would not have been able to commit the murder had it not been for his role within the enterprise. (Gov. Mem. at 22-30.)

The Government adduced evidence at trial that in 2001, Santoro, a Genovese crime family associate, threatened to kidnap Basciano's son. (Tr. at 5488.) Basciano learned of this threat through two Genovese crime family associates, Joseph Filippone ("Filippone") and Dominick Martino ("D. Martino"). (Tr. at 5490-92, 5666-72). The Government admitted into evidence numerous intercepted telephone conversations between individuals related to both the Bonanno and the Genovese crime families in the two days preceding and the week following the Santoro murder. Two days before the murder, Michael Mancuso ("Mancuso"), a Bonanno crime family soldier, requested an urgent meeting with James Martino ("J. Martino"), D. Martino's brother and a Genovese crime family soldier. (Government Exhibit ("Gov. Exh.") GX 241(a) at 3.) The next day, J. Martino ordered a third party to locate D. Martino concerning something "very, very important." (Gov. Exh. GX 241(b) at 3.) On the day of the murder, Mancuso told J. Martino that he would relay the message that J. Martino was doing his best to locate his brother. (Gov. Exh. GX 241(c) at 2.) Within the hour, J. Martino was observed meeting with Dominick Cirillo ("Cirillo"), who was the boss of the Genovese crime family at the time. (Tr. at 6450-53, 6459-60.) In the week following the murder, J. Martino then told D. Martino, "This is over and done with, and don't talk to nobody about anything!" (Gov. Exh. GX 241(g) at 2.)

Dominick Cicale ("Cicale") testified that he, along with Basciano, Anthony Indelicato ("Indelicato"), Anthony Donato ("Donato"), and John Tancredi ("Tancredi") committed the murder. (Tr. at 5485-86.) At the time of the murder, Cicale, Donato and Tancredi were

11

associates of the Bonanno crime family, and Basciano and Indelicato were Bonanno crime family soldiers. (Tr. at 5486-87.)

Basciano does not dispute that the evidence was sufficient to establish his guilt of the charged act. Instead, he claims that there was insufficient evidence to show that the murder was related to the enterprise. (Basciano Mem. at 21-22.) After careful review, however, it is clear that the evidence certainly provided a reasonable basis for the jury to infer that Basciano could not have committed the murder had it not been for his position within the Bonanno crime family enterprise.

In the first place, Basciano learned about the kidnapping plot from D. Martino, a Genovese crime family associate. It was reasonable, therefore, for the jury to have inferred that Basciano received this information solely as a result of his place as a respected member of the Bonanno crime family.

Further, the recorded conversations present sufficient evidence from which the jury could infer that Basciano received permission from the Genovese crime family to murder Santoro. Specifically, the conversations at issue clearly involved a time-sensitive issue. J. Martino went so far as to send someone to look for D. Martino, and classified the issue as being "very, very important." And, the issue obviously was of importance to both families since Mancuso, of the Bonanno family, noted he would "relay" the effort undertaken by J. Martino, of the Genovese family, to find D. Martino. Given that these conversations occurred within the hours preceding the shooting, it certainly was reasonable for the jury to conclude that the "very, very important" issue was Basciano's impending murder of Santoro. In addition, since J. Martino was observed talking with Cirillo, the then-boss of the Genovese family, within an hour of speaking with

Mancuso about the impending shooting, the jury had a rational basis upon which to infer that J. Martino had obtained permission from Cirillo for Basciano to murder Santoro, a Genovese crime family associate, without repercussions.

Finally, the murder itself was carried out by Basciano with the aid of three Bonanno crime family associates and one Bonanno crime family soldier. It was therefore reasonable for the jury to have inferred that Basciano received substantial support from the Bonanno crime family enterprise in order to effectuate the murder itself.

Based on this evidence and all of the reasonable inferences in favor of the Government which can be drawn therefrom, Basciano clearly received invaluable aid from both Bonanno and Genovese crime family members in learning about the kidnapping threat, obtaining permission from the Genovese crime family to commit the murder, and planning and committing the murder. Therefore, there was ample evidence upon which the jury could have relied in determining that the murder was related to the Bonanno crime family enterprise insofar as Basciano was able to commit the murder because of his position as a respected soldier within the enterprise. See United States v. Bruno, 383 F.3d at 84.

Basciano now claims that such an interpretation of the intercepted telephone calls does not rely on a "reasonable inference," but rather requires a "guess." (Basciano Reply Mem. at 19.) Given the proximity of time between the telephone calls and the murder, the clearly exigent nature of the phone calls, and the references to D. Martino, who initially revealed the kidnapping plot to Basciano, however, I find that such an inference is reasonable and not speculative.

c. Interrelatedness of Racketeering Acts

Basciano further contends that the Nunez shooting, the Santoro murder, and the

13

remaining racketeering acts are insufficiently related to one other to support a conviction on count one of the indictment. (See Basciano Mem. at 27.) This claim must also fail. Racketeering acts one and two pertain to Basciano's ownership and management of illegal gambling businesses, to wit, policy gambling and joker-poker machines. As an initial point, it is clear that the Nunez shooting shares a common purpose with racketeering acts one and two, which all pertain to the Bonanno crime family's maintenance of its gambling businesses.

Moreover, many of the participants in the racketeering acts are the same: Donato was involved in racketeering acts one, two, eleven (the Santoro murder) and twelve (solicitation to murder D. Martino); and DeFilippo was involved in racketeering acts one and two. And, each of the racketeering acts is clearly related to the Bonanno crime family enterprise. Indeed, neither Basciano nor DeFilippo challenges the sufficiency of the proof of the relationship between the enterprise and racketeering acts one, two, four, seven, ten, and twelve. Because the remaining racketeering acts at issue – three, seven, and eleven – are sufficiently related to the enterprise as explained infra, they are sufficiently related to one another for the purposes of the RICO statute. See Indelicato, 865 F.2d at 1383-84. Given these similarities, and the fact that these crimes were all clearly committed in furtherance of the Bonanno crime family enterprise and were not "isolated" criminal acts, the Government sufficiently demonstrated interrelatedness among the racketeering acts. See id.

**2.    Defendants' Rule 33 Motion for a New Trial in the Interests of Justice**

Basciano moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure on the basis that the court improperly instructed the jury on the relatedness requirement of the RICO conspiracy. He alleges that the court "conflat[ed] the two requirements

of relatedness" by "fail[ing] to explicitly instruct the jury that the Government had to prove both horizontal and vertical relationship" among the racketeering acts. (Basciano Mem. at 35-37.)

I charged the jury as follows:

> The racketeering acts are "related;" that is, have the same or similar purposes, results, participants, victim, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events. Two racketeering acts <u>may</u> be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts are related to the same enterprise. For example, the requisite relationship between the RICO enterprise and a predicate racketeering act may be established by evidence that the defendant was enabled to commit the racketeering act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that the racketeering act benefitted the enterprise, or by evidence the racketeering act promoted or furthered the purposes of the enterprise.

(Tr. 10142-43 (emphasis added).) Basciano now alleges that I erred by using the term "may," suggesting that "must" would have provided a more accurate explanation of the legal definition of relatedness as it pertains to racketeering acts. Basciano Mem at 36. At trial, Basciano requested that I instruct the jury concerning the "pattern" requirement of the RICO statute as follows:

> The pattern of racketeering activity, on the other hand, is proved by evidence of a minimum of two related acts of racketeering, which the participants of the enterprise committed or aided and abetted. The proof used to establish those separate elements <u>may</u> be the same, or overlapping. For example, if you find that an ongoing enterprise existed, the existence of this enterprise may help establish that separate acts were part of a pattern of continuing criminal activity. Nevertheless, you should bear in mind that proof of an enterprise is not necessarily established proof of a pattern of racketeering activity, and vice versa. The enterprise as a separate element, must be proved by the government.

(Request to Charge on Behalf of Defendant Vincent Basciano ("Basciano Charge") at 39-40

15

(emphasis added).)

The word with which Basciano now takes issue is the very same word used in his proposed instructions. In addition, there were no other written or timely oral requests for proposed instructions which contain the language he now claims to be correct, and no objections were raised to the instructions as given. Under these circumstances, Basciano has both waived and forfeited this challenge. United States v. Olano, 507 U.S. 725, 733 (1993); United States v. Grammatikos, 633 F.2d 1013, 1022 (2d Cir. 1980).

In any event, the principle articulated by both the given jury charges as well as Basciano's proposed instructions is a proper restatement of the law as set forth by the Second Circuit in Indelicato, as outlined above. See Indelicato, 865 F.2d at 1383 (holding that "relatedness may be proven through the nature of the RICO enterprise") (emphasis added). Therefore, I find that, far from presenting the "extraordinary circumstances" necessary to warrant a new trial in the interests of justice, see Locascio, 6 F.3d at 949, the jury considered all of the evidence based on a proper understanding of the law. Basciano's motion for a new trial in the interests of justice is therefore denied.

DeFilippo moves pursuant to Rule 33 for a new trial on the same grounds on which he based his Rule 29 motion to acquit. (DeFilippo Mem. at 1-2.) Given the reasonableness of the jury's findings as outlined infra, however, I find no "manifest injustice" to have occurred. See Ferguson, 246 F.3d at 134. Therefore, DeFilippo's motion pursuant to Rule 33 is denied.

**B.     Basciano's Conviction for Extortionate Extensions of Credit**

Basciano next challenges count two of the indictment, on which the jury was unable to reach a verdict, on the basis that the Government failed to prove that the Eastern District of New

16

York was the proper venue. (Basciano Mem. at 27-34.) Specifically, he claims that the Government failed to adduce evidence that Basciano "conducted, financed, managed, supervised, directed and owned all or part" of an illegal joker-poker gambling business in the Eastern District of New York within the statute of limitations period. (Id. at 27.) Basciano's claim is without merit, and his motion is denied.

Of course, a criminal defendant has the right to be tried in the "district wherein the crime shall have been committed[.]" U.S. Const. amend. VI; see Fed. R. Crim. P. 18. In determining the appropriate venue, the court "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999). Because venue is not an element of the crime, venue need only be established by a preponderance of the evidence. United States v. Geibel, 369 F.3d 682, 695-96 (2d Cir. 2004).

Here, Basciano is charged with "conduct[ing], financ[ing], manag[ing], supervis[ing], direct[ing], or own[ing] all or part of an illegal gambling business." See 18 U.S.C. § 1955(a). One of the essential elements of this crime, then, is the "manage[ment]" of a gambling business. To that end, the Government presented evidence that Basciano made payments from the charged joker-poker gambling business to Joseph Massino, then-boss of the Bonanno crime family, in Queens within the statute of limitations. (Tr. 2789, 4243, 4530, 5398, 5616-20, 8434.)[1] Basciano's distribution of profits from the charged gambling business within the borough of Queens certainly constitutes financial management of the business. Basciano's claim that this

---

[1] Cicale testified that he was first introduced to members of the Bonanno crime family in December of 1999 (Tr. 5473), and Basciano was first indicted on November 17, 2004.

activity was not "part of the crime" but merely "followed its commission," (Basciano Reply Mem. at 23), is belied by evidence that he managed aspects of the Bonanno crime family gambling business over the course of many years, spanning the time before, during, and after Basciano made these payments to Massino. (Tr. 6770, 6813-14, 7947-49.) Therefore, the evidence was sufficient for the jury to properly find that Basciano committed an essential element of the charged offense in the Eastern District of New York.

### C. DeFilippo's Conviction for Conspiracy to Use Extortionate Means to Collect Extensions of Credit

DeFilippo was convicted of count five of the indictment and racketeering act seven, both of which charged him with an extortionate collection of credit conspiracy. DeFilippo now moves to either set aside the verdict on these charges pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, alternatively, for a new trial pursuant to Rule 33. He acknowledges that he and "others in his crew borrowed money . . . to 'put out on the street' at usurious rates." (DeFilippo Mem. at 6.) DeFilippo's sole contention is that there was "no evidence at all that [he] agreed to use <u>extortionate</u> means to collect extensions of credit." (Id. (emphasis added).) There was ample evidence, however, to support the jury's findings that DeFilippo conspired to use extortionate means to collect the debts.

Because of the "inherent secrecy of a conspiracy," the Second Circuit has provided "additional standards for assessing the sufficiency of evidence concerning the crime." <u>United States v. Amato</u>, 15 F.3d 230, 235 (2d Cir. 1994). Specifically, the Government needs solely to have proved that Defendants "agreed to commit the underlying offense, not whether their conduct would actually have constituted that offense." <u>United States v. Rosa</u>, 17 F.3d 1531,

1543-44 (2d Cir. 1994). To that end, the Government "need not present evidence of a formal or express agreement, but may rely on proof that the parties have a tacit understanding to engage in the offense." Amato, 15 F.3d at 235.

In this case, the jury heard recorded conversations between DeFilippo and Manny Guaragna ("Guaragna"), a Bonanno crime family member, about debt collection. DeFilippo stated, "[You c]an't prevent a guy from collecting his money." He then said: "I'm not looking to hurt the guy, I'm not just, make sure I get my money. Forget about hurting him. It's out of the picture, it's not gonna happen."(Gov. Exh. GX 340(ff) at 3-4.) From these statements, it is clear that DeFilippo understood that force, or the threat of force, was used to collect debts on behalf of the Bonanno crime family. Therefore, the jury had a reasonable basis upon which to infer that DeFilippo was aware that extortionate means might be used to collect payments on the money he loaned out. See United States v. Persico, No. 92-351, 1997 WL 867788 at *40-41 (E.D.N.Y. Mar. 13, 1997), aff'd in part, rev'd in part on other grounds by United States v. Orena, 145 F.3d 551 (2d Cir. 1998) (upholding extortionate collection conspiracy conviction where evidence showed the defendant was aware that his money would be loaned to others "against whom extortionate means might be used"). Consequently, there is no basis upon which to overturn the jury's verdict, and there is no "manifest injustice" warranting a new trial in the interests of justice. See Ferguson, 246 F.3d at 134.

### D. DeFilippo's Motion to Sever

DeFilippo moves to sever his retrial from that of Basciano. Because the Government has already consented to that severance, which has been so ordered by this Court, DeFilippo's current motion is DENIED as moot.

## IV. Conclusion

For the aforementioned reasons, Defendants' motions made pursuant to Federal Rules of Criminal Procedure 29 and 33 are DENIED, and DeFilippo's motion to sever is DENIED as moot.

SO ORDERED.

Dated: December 21, 2006  Nicholas G. Garaufis
Brooklyn, N.Y.  United States District Judge