UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

**03-CR-929 (NGG)**

-against-

VINCENT BASCIANO,


Defendant.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Vincent Basciano ("Basciano") is currently serving a sentence of life

imprisonment following convictions in two separate trials. (See Amended Judgment (Docket

Entry # 1077).) On May 9, 2006, a jury found Basciano guilty of racketeering conspiracy,

including the predicate acts of illegal gambling and attempted murder and conspiracy to murder

David Nunez. On July 31, 2007, after his second trial, a jury found Basciano guilty of

conspiracy to distribute marijuana, three counts of illegal gambling, and racketeering, including

the predicate acts of illegal gambling, murder and conspiracy to murder Frank Santoro,

solicitation to murder Dominick Martino, and solicitation to murder Salvatore Vitale.

On March 24, 2010, Basciano filed a third motion for a new trial under Rule 33 of the

Federal Rules of Criminal Procedure based on newly discovered evidence allegedly

demonstrating that the Government withheld evidence in violation of Brady v. Maryland, 373

U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. §

3500. He principally claims that the Government suppressed (1) evidence related to his role in

Randolph Pizzolo's murder and (2) impeachment evidence and Jencks Act material related to

1

testimony given by Government witness Dominick Cicale. (See Motion (Docket Entry # 1124).) For the following reasons, his motion is denied.

## I.    BACKGROUND

At both of Basciano's trials, the Government introduced evidence, under Federal Rule of Evidence 404(b), that Basciano ordered Dominick Cicale ("Cicale") to murder Randolph Pizzolo ("Pizzolo"). Basciano did not face charges for Pizzolo's murder in either of his two trials; the court permitted the Government to introduce evidence of Basciano's alleged role in the murder to show the development of relationships of trust between Basciano and the Government's witnesses and to provide background evidence regarding the Bonanno organized crime family.[1]

The Government has disclosed much of the challenged evidence in connection with another criminal case pending against Basciano before this court. See United States v. Basciano, No. 05-CR-060 (NGG) (E.D.N.Y.) (Superseding Indictment (S-9)). In that case, Basciano is charged with, inter alia, capital murder and conspiracy to murder Pizzolo in aid of racketeering. Because this court and the Court of Appeals have previously addressed many of Basciano's current claims, the court first discusses those previous decisions insofar as they are relevant to the instant motion.

---

[1] (See Transcript from Trial #1 ("TI")10085-86 (instructing that the "evidence was admitted as background evidence to show the development of relationships of trust between the defendant and the Government's witnesses, to provide background evidence of the charged enterprise, and to corroborate the testimony of the Government's witnesses"); Transcript from Trial #2 ("TII") 4752-53 (instructing that the "evidence was admitted as background evidence to show the development of relationships of trust between the defendant and the Government witnesses, and to provide background evidence of the charged enterprise. In addition, as appropriate, you may consider this evidence in evaluating any claim by the defense that the defendant was incapable or unwilling to violate the rules of organized crime.")

## A.    Procedural History

### 1.    Basciano's Second Rule 33 Motion

Following his second trial, Basciano filed a second motion for a new trial under Rule 33

of the Federal Rules of Criminal Procedure.[2] He asserted, inter alia, that the Government

suppressed evidence showing that shortly before testifying at Basciano's second trial, Cicale

solicited another inmate to frame Basciano and a corrections officer in a sham jailhouse plot to

murder Cicale.[3] See United States v. Basciano, No. 03-CR-929 (NGG) (Docket Entry # 1065),

2008 WL 794945 (E.D.N.Y. Mar. 24, 2008) ("Rule 33 #2").

Even though the information "arguably might have been helpful to the defense," the

court held that, had the information been available, there was not a "reasonable probability" of a

different result at trial. Id. at *4. The court found that Basciano "failed to establish that such

evidence [was] 'material' such that it undermine[d] confidence in the outcome of the trial." Id.

at *3. The Government presented significant evidence of Basciano's guilt, independent from and

corroborative of Cicale's testimony; and during Cicale's direct examination, and nine hours of

aggressive cross-examination, the jury heard significant impeachment evidence concerning

"Cicale's extensive violent and criminal past, including a conviction for manslaughter,

involvement in two other murders, drug dealing, assaults, shootings, armed robbery while on

bail, arson, fraudulent check cashing, violations of prison regulations, violations of supervised

release, and defrauding his own grandmother." Id. at *5. Defense counsel also elicited that

Cicale lied during his first proffer session with the Government and made inconsistent statements

---

[2] Following his first trial, Basciano moved for either an acquittal under Rule 29 or a new trial under Rule 33, challenging the court's jury instructions and sufficiency of the evidence with respect some of the charged elements and venue in the Eastern District of New York. See United States v. Basciano, No. 03-CR-929 (NGG), 2006 WL 3780542 (E.D.N.Y. Dec. 21, 2006). Basciano does not raise these issues in the instant motion and the court does not further discuss them here.

[3] Basciano also claimed he was deprived of the right to conflict-free counsel and that this court erred in refusing to recuse itself after discovery of an alleged "hit list," written by Basciano, and bearing my name.

3

at Government debriefings and at Basciano's first trial. Id. In light of the extensive impeachment offered at trial, the court concluded that knowledge of the jailhouse plot "would not have substantially aided the jury in assessing Cicale's credibility." Id. Because information about the jailhouse plot was immaterial, the court assumed, without deciding, that the Government knew of or should have known of the plot.

      2.   Basciano's Appeal

After Basciano filed the instant motion, the Second Circuit affirmed his convictions and this court's decision denying his second motion for a new trial. See United States v. Basciano, No. 08-1699-cr, 2010 WL 2802566 (2d Cir. Jul. 16, 2010) (summary order) ("Basciano Appeal"). The Court of Appeals rejected all of Basciano's claims, including argument based on newly discovered evidence that the Government withheld information in violation of Brady and Giglio, and that the Government impermissibly bolstered the credibility of Cicale and cooperating witness Salvatore Vitale ("Vitale") and failed to correct their false testimony.[4]

In his Brady and Giglio claims, Basciano asserted that the Government suppressed the following information:

- A May 6, 2005 FBI report of an interview with Frank Vasaturo ("Vasaturo") stating that in 2004, Vasaturo, Pizzolo, Cicale, and Vincent Basciano Jr. sat at the same table at a wedding reception, at which Vasaturo and Pizzolo discussed the disappearance of Dominick Cirillo's son, Nicky Cirillo. (Def. Appendix on Appeal ("A- ") 249-53) According to the report, Pizzolo stated that Nicky Cirillo would never be found. When Vasaturo asked Pizzolo how he knew, "Pizzolo smiled[,] pointed to himself and gestured with his chin at Cicale, who was sitting across from them." (A-252.)

- A Government letter, dated June 12, 2009, that included the following information: (i) According to Darren D'Amico, around 2002, Pizzolo shot

---

[4] Basciano also claimed that this court failed to recuse itself after learning that Basciano had included my name on a purported "hit list"; that the trial evidence and jury charge constructively amended or varied the superseding indictment on which Basciano was tried in 2007; and that a conflict of interest precluded his defense counsel from rendering effective representation.

D'Amico in the stomach, and Joseph Cammarano Sr. told D'Amico that "'Uncle John' (believed to be John Palazzolo) and 'Frankie' (believed to be Frank Borgongone) had it 'all set up' to 'go clip' Pizzolo, but that D'Amico believed this was untrue" and that D'Amico thought he was being set up to be murdered. (A-235.) D'Amico also stated that he was not involved in Pizzolo's murder. (ii) According to an inmate at the Franklin Correctional Facility, in Malone, New York, Joseph Bonelli and Robert Benedetto had been "overheard discussing, among other things, that the reason that 'Ace' and 'Chicale' killed Randy is because Randy is the person that murdered 'Quiet Dom's' son. The inmate also stated that at an unspecified previous time Anthony Federici had given 'Hippy' Zanfardino permission to kill Randy Pizzolo and Chris Castellano." (iii) Richard Berte told cooperating witness Richard Cantarella that "while Berte was housed with Vincent Basciano at the . . . MCC, Basciano stated that "he wanted to beat [AUSA] Andres's head in with a baseball bat" and, while housed with Joseph Massino at the MCC, Massino indicated that it was his "original idea to kill Andres." (See A-235.)

- Information that Pizzolo applied for life insurance after Basciano had been arrested. (See Def. App. Br. 172.)

- Grand jury testimony given by Al Perna indicating that he never stated that Pizzolo told him that he would not remain in Florida. (See Def. App. Br. 172-73.)

- Information of, or potentially leading to, Cicale's jailhouse murder plot, including an eight-page letter written by CM.[5] (See Def. App. Br. 108 n.2.)

Basciano argued that the Pizzolo-related information exculpated him from Pizzolo's murder and impeached Cicale's testimony regarding Pizzolo's murder. He argued that the Vasaturo FBI report and evidence that Pizzolo shot D'Amico demonstrated that Cicale, Darren D'Amico, and "Quiet Dom" (believed to be Dominick Cirillo) had independent motives to kill Pizzolo. (Def. App. Br. 170-73.) Since Pizzolo had purchased life insurance only after Basciano's arrest, Basciano argued that Pizzolo was concerned for his safety even after Basciano was incarcerated and could not harm him. (See Def. App. Br. 172.) Regarding Cicale's credibility, Basciano argued that evidence of the jailhouse plot demonstrated Cicale's "bias against Basciano and his willingness to lie even after entering into a cooperation agreement with the government." Basciano Appeal, 2010 WL 2802566, at *1. Basciano also argued that Al

---

[5] CM are the initials of an individual whose identity is currently under seal.

Perna's grand jury testimony that he never stated that Pizzolo told him that he would not remain in Florida contradicted Cicale's testimony that Perna told Basciano that Pizzolo would not move to Florida. (See Def. App. Br. 173.)

The Court of Appeals found that the Vasaturo FBI report and other allegedly suppressed information regarding Pizzolo's murder was immaterial, as it would have been cumulative of the impeachment evidence introduced against Cicale and because the Pizzolo murder was not charged in either of Basciano's two trials. Basciano Appeal, 2010 WL 2802566, at *2. The Court of Appeals held that information about the jailhouse plot was immaterial because "Cicale's life-long and murderous criminal history, coupled with his record of deceit and violence while cooperating with federal authorities and inconsistent statements in his own testimony, provided such fertile grounds for impeachment as to occupy nearly 300 pages of transcript spanning two days." Id. at *2. The Court of Appeals declined to address whether the Government had actual or constructive knowledge of the jailhouse plot before the Government disclosed it to Basciano.

Regarding the cooperation agreements that Cicale and Vitale entered into, Basciano argued that the Government improperly bolstered the credibility of these witnesses by eliciting false testimony that they could face the death penalty if they lied in violation of their cooperation agreements. Id. at *2-3. The Court of Appeals rejected this claim, reasoning that no evidence belied either Cicale or Vitale's proffered belief or indicated that the Government knew that their testimony was false or mistaken. It stated that "[a] witness's understanding of his cooperation agreement with the government – whether correct or not – is relevant to a jury's assessment of his motives in testifying." Id. at * 3.

After addressing these claims, the Court of Appeals held that "Basciano's other arguments on appeal . . . [were] without merit." Id. at *5

**B. Basciano's Current Claims**

    1.   Pizzolo-related Claims

Basciano now claims that the Government suppressed information relating to his role, or lack thereof, in Pizzolo's murder. Because Basciano filed this motion while his appeal was pending, many of the claims that he raises here were addressed and disposed of by the Court of Appeals.[6] For this reason, the court categorizes Basciano's claims into those that have been previously litigated before the Court of Appeals and those that have not.

    a.   Claims Previously Presented to the Court of Appeals

Basciano has already presented Brady claims to the Court of Appeals based on the following proffered information: (1) Vasaturo FBI report (Def. Ex. (Docket Entry ## 1126-32) F.); (2) the June 12, 2009 Government letter containing information that (i) Pizzolo shot D'Amico and that Joseph Cammarano Sr. told D'Amico that two individuals, other than Basciano, would "go clip" Pizzolo, and that D'Amico stated that he was not involved in Pizzolo's murder, (ii) Richard Berte told a cooperating witness that while housed with Basciano at the MCC, Basciano stated that, he wanted to "beat [AUSA] Andres's head in with a baseball bat" and that Joseph Massino indicated that it was his "original idea to kill Andres," (iii) according to an inmate at the Franklin Correctional Facility, Joseph Bonelli and Robert Bendetto were overheard discussing that "Ace" and "Chicale" killed Randy because Randy murdered 'Quiet Dom's' son,"[7] (Def. Ex. A at 2.); (3) Al Perna's grand jury testimony indicating that he never stated that Pizzolo told him that he was not moving to Florida, (Def. Ex. I).

---

[6] The Court of Appeals decided Basciano's appeal on July 16, 2010. The instant motion was not fully-briefed until August 6, 2010.

[7] Although information related to Richard Berte and the Franklin Correctional facility is in the appellate record, it does not appear that Basciano incorporated it into his arguments on appeal.

b.    Claims not Presented to the Court of Appeals

Basciano presents new Pizzolo-related Brady claims that he neither presented to this

court nor to the Court of Appeals, based on the following newly-discovered information:

- the proffer agreement of Richard Adler, an insurance agent, who assisted Pizzolo in obtaining a life insurance policy, (Def. Ex. H);

- a February 22, 2005 FBI report conveying that Richard Adler met with Pizzolo on the night of his murder, that Pizzolo had a life insurance policy, and that Pizzolo's wife called Adler the day after Pizzolo's murder and discussed Pizzolo's death benefits in a calm manner, (Def. Ex. E);

- grand jury testimony given by Pizzolo's girlfriend, Dora Roman, purportedly indicating that she did not know of any animosity between Pizzolo and Basciano, (Def. Ex. J);

- a December 12, 2006 FBI report indicating that, according to Dora Roman, Pizzolo told her that he killed someone in October 2004, (Def. Ex. G);[8]

- grand jury testimony given by Natale Terzo indicating that Pizzolo was obnoxious, but not physically violent, at his restaurant, (Def. Ex. K);

- grand jury testimony given by Al Perna indicating that things on a construction site on Shurz Avenue were going "smooth," that he did not have a conversation with Cicale about Basciano's arrest, but that he told everyone at the construction site that Basciano had been arrested. (Def. Ex. I).

2.    Cicale's Jailhouse Plot

In connection with Basciano's second motion for a new trial, the Government submitted

to the court, ex parte and under seal, unredacted documents from the Bureau of Prisons related to

Cicale's jailhouse plot. (See Gov't sealed and ex parte submission dated Mar. 14, 2008; Gov't

Ltr. Sept. 14, 2009 (Docket Entry # 1112).) On September 15, 2009, the Government disclosed a

version of those documents to Basciano with fewer redactions than the version that it had

---

[8] Basciano submitted the December 12, 2006 FBI report to the Court of Appeals on his direct appeal. (See A-268.) Because it does not appear that he raised any arguments based on this document, the court considers it here.

previously disclosed to Basciano. (See Gov't Ltr. Sept. 15, 2009 (Docket Entry # 1113).)
Basciano now proffers those less-redacted documents to argue for a new trial based on Cicale's
jailhouse plot.

### 3. Richard Berte

Basciano argues that newly-disclosed information discussing Richard Berte's statements
that Basciano sought to harm AUSA Andres and that Massino stated that it was his "original
idea" to murder Andres undermines this court's previous decision upholding the Attorney
General's imposition of a Special Administrative Measures Order ("SAMs Order") against
Basciano and influenced Basciano's decision not to seek consolidation of the 03-CR-929 and 05-
CR-060 indictments.

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 33

Under Rule 33 of the Federal Rules of Criminal Procedure, "[u]pon the defendant's
motion, the court may vacate any judgment and grant a new trial if the interest of justice so
requires." Fed. R. Crim. P. 33(a). "To secure a new trial based on a violation of Brady or Giglio
a defendant must demonstrate 'a reasonable probability that, had the suppressed information
been disclosed to the defense, the result of the proceeding would have been different.'"
Basciano Appeal, 2010 WL 2802566, at *1 (quoting Kyles v. Whitley, 514 U.S. 419, 433-34
(1995) (internal quotation marks and alterations omitted)). Under Brady, Giglio, and their
progeny, the Government must "disclose material information that is favorable to the accused,
either because it is exculpatory, or because it is impeaching." United States v. Rodriguez, 496
F.3d 221, 225 (2d Cir. 2007) (internal quotation marks omitted). A Brady violation has three

9

components: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). The materiality of suppressed information must be "considered collectively, not item-by-item." See Kyles, 514 U.S. at 436.

A motion based on newly discovered evidence "must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Because Basciano was found guilty following his first trial more than three years before filing this motion, the court only considers his claims with respect to his second trial.[9]

### 2. Law of the Case and the Mandate Rule

Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988) (internal quotation marks and alterations omitted). The mandate rule is a branch of the law-of-the-case-doctrine that governs the relationship between appellate courts and trial courts. It applies when a circuit court remands a case to a district court, see United States v. Burrell, 467 F.3d 160, 165 (2d Cir. 2006), or when a party files a new motion in a district court following an appeal, see United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977). Under the rule, "where issues have been explicitly or implicitly decided on appeal, the district court is obliged . . . to follow the decision of the appellate court." United States v. Minicone, 994 F.2d 86, 89 (2d Cir. 1993). The mandate rule also "bars the district court from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals." United States v. Stanley, 54 F.3d 103, 107 (2d Cir. 1995)

---

[9] Even if Basciano timely filed his motion with respect to both of his trials, the court would deny it with respect to the first trial for the same reasons.

(internal quotation marks omitted). District courts, however, retain "discretion under the mandate rule to reconsider, on remand, issues that were not expressly or implicitly decided" by the court of appeals, id. at 107 (internal quotation marks omitted), including issues arising from newly discovered evidence. See generally Cirami, 563 F.2d at 32-33 (finding that the district court properly considered new evidence on a post-appeal motion to vacate judgment).

Under these principles, a district court faced with a motion for a new trial under Rule 33 may not reconsider Brady claims that have been decided by a court of appeals. See United States v. Bell, 321 Fed. Appx. 862, 2009 WL 749866 (11th Cir. Mar. 23, 2009) (unpublished opinion). But the mandate rule has a more limited application when a defendant asserts new Brady claims in addition to Brady claims that have already been asserted on appeal. Because the materiality of suppressed information must be "considered collectively, not item-by-item," see Kyles, 514 U.S. at 436, a district court must consider the defendant's new claims cumulatively with the materiality of all the defendant's Brady claims, including those that the defendant appealed. In these circumstances, the mandate rule does not prevent a district court from addressing whether the materiality of the defendant's appealed-Brady claims in combination with the defendant's new claims rises to the level of a constitutional violation. Cf. Schledwitz v. United States, 169 F.3d 1003, 1012 (6th Cir. 1999) (noting that previous Brady ruling on direct appeal has limited res judicata effect to the materiality analysis in a subsequent § 2255 petition). But if the court of appeals' reasoning completely forecloses the defendant's additional claims, the mandate rule bars their consideration. See United States v. Ross, 372 F.3d 1097, 1106 (9th Cir. 2004) (law-of-the-case bars review of additional impeachment evidence when the court previously held that "the evidence of guilt would have been overwhelming even if [the witness's] credibility had been demolished").

**B.    Application**

1.    Pizzolo-related Claims

Basciano raised many of his Pizzolo-related claims on direct appeal.  The Court of

Appeals either explicitly rejected the pending claims identified in section I.B(1)(a) as immaterial

or summarily found them to be without merit.  Accordingly, the mandate rule only permits this

court to independently consider Basciano's Pizzolo-related claims that have not been ruled on by

the Court of Appeals.  See supra section I.B(1)(b).  The court considers each in turn and then

determines whether, in combination with the Brady claims that Basciano raised on appeal, they

give rise to a constitutional violation.  See Kyles, 514 U.S. at 437 n.10 ("We evaluate the

tendency and force of the undisclosed evidence item by item; there is no other way.  We evaluate

its cumulative effect for purposes of materiality separately and at the end of the discussion.").

a.    Richard Adler

Basciano asserts that the Government suppressed a proffer agreement that Richard Adler

signed with the Government on April 20, 2005 and a FBI report dated February 22, 2005,

indicating that Adler met with Pizzolo on the night of his murder, that Pizzolo's wife called

Adler the next day to discuss insurance proceeds, and that she sounded calm.  Basciano argues

that if he had known about the proffer agreement, he could have obtained information with

which to cross-examine Cicale and could have discovered that Pizzolo sought life insurance after

Basciano had been arrested.  Had the defense known about the FBI report, Basciano argues that

he could have obtained information from Adler about Pizzolo's state of mind on the night of his

murder.

As discussed above, the Court of Appeals rejected Basciano's claim based on information

that Pizzolo sought life insurance from Adler.  For this reason, information that may have led to

evidence that Pizzolo sought life insurance is also immaterial for Brady and Giglio purposes. And speculation that the FBI report could have led to information revealing Pizzolo's state of mind before his murder or material with which to impeach Cicale is too speculative to support a constitutional violation. See United States v. Agurs, 427 U.S. 97, 109 n.16 (1976) (noting that the government does not have an obligation to "communicate preliminary, challenged, or speculative information." (internal quotation marks omitted)).

b.      Dora Roman

Basciano claims that the Government suppressed two documents regarding Dora Roman, Pizzolo's girlfriend at the time of his murder: her grand jury testimony in which Basciano claims that she testified that Pizzolo did not have any problems with Basciano and an FBI report, dated December 12, 2006, indicating that on October 23, 2004, Pizzolo privately confessed to Roman that he killed a man. Any claims based on her grand jury testimony are unfounded. While Roman initially answered questions regarding Vincent Basciano, she later testified—in the same session—that she was referring to "Vinny Van Zandt," not Vincent Basciano. (See Def. Ex. J at 34-35, 51.) Regarding Pizzolo's confession, Basciano argues that the FBI report reveals that Pizzolo may have confessed to Roman that he killed Nicholas Cirillo, which the defense could have used, in conjunction with the Vasaturo FBI report to argue that Cicale had an independent motive to kill Pizzolo. According to Basciano, if Pizzolo had actually confessed to Roman that he participated in Nicholas Cirillo's disappearance, then Cicale would have been even more determined to kill Pizzolo. There is no indication, however, that Cicale knew about Pizzolo's confession to Roman or that Pizzolo discussed with Roman Cicale's role in the alleged murder. The Court of Appeals rejected Basciano's claim based on the Vasaturo FBI report and his theory that it showed Cicale had an independent motive to kill Pizzolo. Because information that

13

Pizzolo privately confessed to Roman about killing a man does not make it more likely that the theory already rejected by the Court of Appeals would have created a reasonable probability of a different result at trial, Basciano's claim related to the December 12, 2006 FBI report is without merit.

        c.    <u>Natale Terzo</u>

Basciano claims that the Government suppressed Natale Terzo's grand jury testimony that contradicted Cicale's trial testimony. At trial, Cicale testified that Joe Cammarano, Jr. told Basciano that Pizzolo "was acting wild, [Pizzolo] went to meet with a soldier in the Bonnano Crime Family with a gun" and that Cicale told Basciano that Pizzolo rushed over to the restaurant with a gun to help Paul Spina when, according to Pizzolo, Paul Spina called him and made it seem like he had a problem at the restaurant. (TRII 1223-25.) Before the grand jury, Terzo testified that Pizzolo was an occasional customer at his restaurant, that he was obnoxious, but "not physical or anything like that, just talks. He just talks stupid"; that he was never hostile towards him, or his restaurant patrons or employees; and that he once had a shouting match in the restaurant a long time ago, "but nothing out of the ordinary."[10] (Def. Ex. K at 30-33.) Basciano argues that Terzo's grand-jury testimony contradicted Cicale's trial testimony and should have been disclosed. Basciano's contention, however, is not supported by the record. The court concludes that these statements did not require disclosure under <u>Giglio</u>. They are not inconsistent. One is merely more detailed than the other.

        d.    <u>Al Perna</u>

Basciano claims that Al Perna's recently-disclosed grand jury testimony contradicts Cicale's trial testimony in two different ways. At trial Cicale testified that Perna was the first

---

[10] The court takes judicial notice that Terzo recently pleaded guilty to perjury based on this testimony. (See <u>United States v. Bana</u>, 09-CR-672, Superseding Information (S-2), Minute Entry dated Aug. 3, 2010: Guilty Plea; Gov't Mem. 130 n.51.)

14

person to tell him about Basciano's arrest and that Cicale then called Anthony Donato to confirm whether that was true. Basciano claims that this enabled the Government to argue that Cicale's subsequent phone call to Anthony Donato "constituted proof that Basciano, Cicale and Donato were participants in Santoro's murder because it demonstrated Cicale's supposed concern that if Basciano had been charged with that crime, he and the other participants, such as Donato, would soon be charged as well." (Reply (Docket Entry # 1151) 19.) Cicale also testified that one of the reasons that Pizzolo was murdered was because of "bad brick work" at a construction site on Schurz Avenue, at which Pizzolo worked. Before the grand jury, Perna testified that "things on the Shores Avenue site" were "smooth." (Def. Ex. I. at 39.) On the issue of telling Cicale that Basciano was arrested, Perna testified before the grand jury that he "spoke to everybody" on the Shurz Avenue job site about his belief that Basciano had been arrested. (Id. at 81.) He also testified that, after Basciano's arrest he did not have any conversations with Cicale about the fact that Basciano had been arrested; his grand jury testimony, however, does not indicate whether Cicale was present at the construction site when he told everyone that he thought Basciano had been arrested. (Id. 83-84.)

According to Basciano, had the jury known about Perna's grand jury testimony, the defense could have argued that Cicale's phone call to Donato was unrelated to Santoro's murder and that Basciano had no animus towards Pizzolo based on shoddy brick work. First, the grand jury testimony regarding the smooth operation of the Shurz Avenue construction site cannot support a Brady claim. Basciano knew or should have known whether he had any disputes with Pizzolo arising from the construction site. United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982) (holding that the Government is not required to disclose grand jury testimony to a defendant who is "on notice of the essential facts which would enable him to call the witness and

15

thus take advantage of any exculpatory testimony that he might furnish." (internal quotation marks omitted)). Second, to the extent that Perna's grand jury testimony—that he told everyone at the construction site, but not specifically Cicale, that he thought Basciano had been arrested—is inconsistent with Cicale's trial testimony that Perna was the first person to tell him about the arrest, it is merely cumulative of other evidence used to impeach Cicale at trial.

    e.  Evidence from the Franklin Correctional Facility

  Although Basciano submitted the Government's letter dated June 12, 2009 to the Court of Appeals, it does not appear that he supported his Brady claims by arguing that an inmate at the Franklin Correctional Facility indicated that two inmates "have been overheard" discussing that Ace and Cicale killed Pizzolo. In any event, this information could not support a claim for a new trial. The Government states that it did not learn about the information until June 1, 2009; and the information could not have existed until June 2008, almost a year after Basciano's second trial, when the two inmates were first incarcerated together at the Franklin Correctional Facility. (See Gov't sealed Ex. F (inmate movement records).) As this information was not "suppressed," its discovery can only support a motion for a new trial if its admission "would probably lead to an acquittal." United States v. Owen, 500 F.3d 83, 87 (2d Cir. 2007) (standard for granting a new trial based on newly discovered evidence). Because one inmate's statement indicating that two other inmates were overheard discussing Pizzolo's murder is inadmissible hearsay, it cannot "probably lead to an acquittal." See United States v. Parker, 903 F.2d 91, 102-03 (2d Cir. 1990) (newly discovered evidence must be admissible to warrant a new trial).

    2.  Cicale's Jailhouse Plot

  As discussed above, both this court and the Court of Appeals decided that evidence of Cicale's jailhouse plot is immaterial and does not rise to the level of a Giglio violation. Based on

evidence that the Government recently released to Basciano concerning Cicale's plot and other jailhouse misconduct that could have led an investigator to the plot, Basciano now reiterates many of his arguments made to this court and the Court of Appeals regarding the Government's failure to uncover and disclose the plot earlier. As Basciano acknowledges, this court has already considered the proffered information in connection with his previous motion for a new trial. (See Def. Mem. (Docket Entry # 1125) 39-40.) The Government submitted unredacted versions of the proffered materials to the court ex parte and under seal with its opposition to his previous motion for a new trial. Accordingly, the mandate rule bars this court from again considering Basciano's claims related to the jailhouse plot. They were explicitly decided by the Court of Appeals and this court cannot modify its own rulings on the issue after they have been affirmed by the Court of Appeals. See Stanley, 54 F.3d at 107; Minicone, 994 F.2d at 89.

    3.  Richard Berte

   Richard Berte's statements are irrelevant to Basciano's motion for a new trial. Basciano was not charged with solicitation to murder AUSA Andres in either of his two trials and the court also precluded evidence of the solicitation at both trials. (See Memorandum & Order dated Feb. 17, 2006 (Docket Entry # 491) 17.) Basciano's argument that the information undermines the Government's evidence in support of the Attorney General's SAMs order is not properly before the court on the instant motion. The court's decision upholding the Attorney General's SAMs order arises from a different case. See Basciano v. Lindsay, 530 F. Supp. 2d 435 (E.D.N.Y. 2008), aff'd, 316 Fed.Appx. 50, 2009 WL 728371 (2d Cir. Mar. 20, 2009) (summary order). Should Basciano want to challenge that decision based on this new information, he should seek relief in that case under the Federal Rules of Civil Procedure. And Basciano's argument that, had he known of the information, he "may have . . . changed" his defense strategy

17

to seek consolidation of indictment with his pending death-penalty prosecution, rather than moving to preclude evidence of the plot to murder AUSA Andres is so unlikely that it does not merit further discussion. It cannot support a motion for a new trial.

## C.    Additional Discovery Requests

In addition to claims based on information recently disclosed by the Government, Basciano seeks discovery of undisclosed information that he claims is either exculpatory or impeaching of the Government's witnesses. Specifically, he seeks disclosure of an ex parte and sealed Government submission made to the court on April 3, 2006 and information related to a meeting that Cicale had with the Government on November 21, 2005.

During Basciano's first trial, the Government disclosed, ex parte and under seal, materials for the court to review and to determine which, if any, of the documents must be disclosed under Brady and its progeny. (See Memorandum & Order dated Apr. 8, 2006 (Docket Entry # 554); Gov't ex parte and sealed submission dated Apr. 3, 2006.) At that time, however, the court declined to engage in a wholesale review of the Government's documents. By letter dated March 9, 2010, defense counsel asked the court to review those documents in anticipation of the instant motion. (See Unger Ltr. (Docket Entry # 1120).) The Government has responded that, of the documents submitted to the court, only two remain undisclosed to the defense: exhibits B and F. (See Gov't Ltr. dated Jun. 15, 2010 (Docket Entry # 1146); Gov't Ltr. ex parte and sealed, dated Jun. 15, 2010.) After reviewing the exhibits, the court determines that they do not contain Brady or Giglio information. They are either inculpatory or corroborative of testimony given by Government witnesses. Accordingly, Basciano's request to disclose these materials is denied.

Regarding Cicale's meeting with the Government, Basciano indicates that Cicale was escorted to a local-area hospital by the United States Marshals Service on November 21, 2005. Basciano speculates that rather than obtaining medical treatment at the hospital on that date, the Government met with Cicale seeking to obtain his cooperation against Basciano. Based on this theory, Basciano seeks any Giglio or Jencks Act material arising from that meeting, including information about whether the Government threatened to seek the death penalty against Cicale for his role in the Santoro murder if he did not cooperate.[11] Since Basciano filed his brief, however, the Government has indicated that its meeting with Cicale on November 21, 2005 "concerned discussion of security matters pertaining to Cicale cooperating; that Cicale did not proffer at the meeting to facts; that the government did not conduct a 'reverse proffer' . . . ; and that the government did not advise Cicale at the meeting about potential charges or other factual matters." (Gov't Ltr. dated Jul. 30, 2010 (Docket Entry # 1150).) As a result, the Government has indicated that no material related to that meeting is discoverable. The court has no reason to doubt the Government's representations. Basciano's request is therefore moot. And even if the Government had threatened Cicale with a death-penalty prosecution to obtain his cooperation, Cicale testified at trial that he believed that if he violated his cooperation agreement by testifying falsely, the Government could pursue the death penalty against him. See Basciano Appeal, 2010 WL 2802566, at *2-3.

## III.  CONCLUSION

None of Basciano's new claims, by themselves, show a reasonable probability that the result of his trial would have been different had the allegedly suppressed information been

---

[11] Basciano also submitted a handwritten letter, addressed to the Court of Appeals, in which he argues that the Government threatened Cicale with a death-penalty prosecution at the meeting on November 21, 2005. His arguments, however, are moot in light of the Government's representations that the meeting only concerned witness security issues.

disclosed to the defense. Basciano's claims also do not rise to the level of a constitutional violation when considered in combination with all his Brady claims, including those previously litigated on appeal. See Kyles, 514 U.S. at 436. As this court previously noted, the Government presented significant evidence of Basciano's guilt for the crimes which he is convicted of—independent from and corroborative of Cicale's testimony. See Rule 33 #2, 2008 WL 794945, at *4. For the foregoing reasons, Defendant's motion for a new trial is denied.

SO ORDERED.

s/ NGG

Dated: Brooklyn, New York
     August 19, 2010

NICHOLAS G. GARAUFIS
United States District Judge