MANDATE

08-1699-cr
United States v. Basciano

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of July, two thousand ten.

PRESENT:   REENA RAGGI,
           RICHARD C. WESLEY,
           PETER W. HALL,
                    *Circuit Judges*,

---

UNITED STATES OF AMERICA,

         *Appellee*,

v.   No. 08-1699-cr

VINCENT BASCIANO, also known as VINNY GORGEOUS, also known as VINNY FROM THE BRONX,

         *Defendant-Appellant*,

JOSEPH MASSINO, also known as JOEY MESSINA, PATRICK DEFILIPPO, also known as "PATTY FROM THE BRONX," JOHN JOSEPH SPIRITO, also known as "JOHNNY JOE," EMANUEL GUARAGNA, ANTHONY FRASCONE, also known as ANTHONY NICOLE, also known as ANTHONY THE HAT, ANTHONY SIANO, RUSSELL TRUCCO, also known as THE TRUCK,

ANTHONY DONATO, also known as LITTLE ANTHONY,

         *Defendants*.*

---

\* The Clerk of the Court is directed to amend the caption to read as shown above.

MANDATE ISSUED ON 09/27/2010

| | |
|---|---|
| APPEARING FOR APPELLANT: | RANDALL D. UNGER, Bayside, New York, and MICHAEL K. BACHRACH, New York, New York. |
| APPEARING FOR APPELLEE: | ANY BUSA and WINSTON Y. CHAN, Assistant United States Attorneys (David C. James, John D. Buretta, Assistant United States Attorneys, *on the brief*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York. |

Appeal from the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on April 17, 2008, is AFFIRMED.

Defendant Vincent Basciano was convicted, following jury trials in 2006 and 2007, of both conspiratorial and substantive racketeering, see 18 U.S.C. § 1962; three counts of conducting an illegal gambling business, see 18 U.S.C. § 1955; and conspiracy to distribute marijuana, see 21 U.S.C. § 846.[1] Presently incarcerated and serving the life sentence imposed in this case, Basciano here contends that his conviction was obtained in violation of due process because (1) the prosecution withheld Brady/Giglio material, (2) the prosecution impermissibly bolstered the credibility of its witnesses and failed to correct false testimony, (3) the district judge failed to recuse himself after learning that Basciano had

---

[1] Basciano was convicted of racketeering conspiracy in 2006, following a joint trial with co-defendant Patrick DeFilippo that resulted in a partial verdict and a hung jury on one gambling count against Basciano. In 2007, Basciano was retried, alone, on charges including the gambling count on which the jury hung in 2006 and additional charges added by the grand jury in a superseding indictment. We discussed these charges in some detail in United States v. Basciano, 599 F.3d 184, 192 (2d Cir. 2010).

included his name on a purported "hit list," and (4) the trial evidence and jury charge constructively amended or varied the superseding indictment on which Basciano was tried in 2007. Basciano further contends (5) that a conflict of interest precluded his defense counsel from rendering effective representation.

We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1. The *Brady/Giglio* Challenge

Basciano contends that the district court erred in denying his motion for a new trial, see Fed. R. Crim. P. 33, based on the prosecution's alleged failure to disclose information favorable to the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). Specifically, Basciano challenges the district court's conclusion that the information at issue – implicating cooperating witness Dominick Cicale in a jailhouse plot to frame Basciano with a sham conspiracy to murder Cicale – was immaterial because its impeachment value was cumulative.[2] Reviewing the district court's denial of a new trial for abuse of discretion, see United States v. Douglas, 525 F.3d 225, 245 (2d Cir. 2008), we detect none here. In reaching this conclusion, we do not resolve the parties' disagreement as to whether the prosecution is fairly charged with knowledge of the jailhouse plot at issue. Rather, like the district court, we conclude that, even if the evidence was suppressed, Basciano was not entitled to a new trial.

---

[2] We understand this challenge to pertain only to Basciano's 2007 trial, as the relevant events occurred after the conclusion of the 2006 trial.

To secure a new trial based on a violation of Brady or Giglio, a defendant must demonstrate "a reasonable probability that, had [the suppressed information] been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433-34 (1995) (internal quotation marks omitted); accord United States v. Spinelli, 551 F.3d 159, 164 (2d Cir. 2008); see also Youngblood v. West Virginia, 547 U.S. 867, 870 (2006) (recognizing that suppression of information favorable to defense requires reversal only if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" (internal quotation marks omitted)). Basciano claims he satisfies this standard because the jailhouse plot information "could have been used to destroy Cicale's credibility" by demonstrating his bias against Basciano and his willingness to lie even after entering into a cooperation agreement with the government. Appellant's Br. at 107. We are not persuaded.

As this court has frequently observed, withheld information is not material in the sense detailed in Kyles if it "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." United States v. Parkes, 497 F.3d 220, 233 (2d Cir. 2007) (internal quotation marks omitted); United States v. Avellino, 136 F.3d 249, 256-57 (2d Cir. 1998). In this case, Cicale's life-long and murderous criminal history, coupled with his record of deceit and violence while cooperating with federal authorities and inconsistent statements in his own testimony, provided such fertile grounds for impeachment as to occupy nearly 300 pages of transcript spanning two days. This record supports the district court's determination – made with the advantage of

4

having presided over both Basciano's conspiratorial and substantive racketeering trials – that "[k]nowledge of the bogus murder plot would not have substantially aided the jury in assessing Cicale's credibility, given the already plentiful impeachment evidence offered against him." United States v. Basciano, No. 03 Cr. 929, 2008 WL 794945, at *5 (E.D.N.Y. Mar. 24, 2008).

No different conclusion obtains when we consider the withheld jailhouse plot information in the context of another purported Brady/Giglio violation, specifically, the government's conceded failure to disclose to Basciano a 2005 report that an organized crime associate had suggested to FBI agents that Cicale had an independent motive to kill Randolph Pizzolo not involving Basciano. Even assuming that Basciano could have used this information – or other allegedly suppressed information regarding Pizzolo – to impeach Cicale's testimony that Basciano ordered the Pizzolo murder, because that murder was not a charged predicate in either the 2006 or 2007 trial, the impeachment is properly deemed cumulative of the many other attacks that were mounted against Cicale's credibility and, thus, immaterial.

Further supporting the district court's rejection of Cicale's Brady/Giglio challenge is extensive record evidence corroborating Cicale's testimony and independently implicating Basciano in the crimes of conviction. As we observed in United States v. Orena, such independent evidence of guilt "increases the degree of significance that would need to be ascribed to the withheld impeachment evidence in order for it reasonably to undermine

confidence in the verdict." 145 F.3d 551, 559 (2d Cir. 1998); accord Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir. 2001); see also United States v. Avellino, 136 F.3d at 256-57.

Because the withheld information in this case does not reasonably undermine confidence in the jury's guilty verdict, we identify no error in the district court's denial of a new trial.

2.   Bolstering/False Testimony Challenge

Basciano argues that the government improperly bolstered the credibility of cooperating witnesses Cicale and Salvatore Vitale by eliciting false testimony that the men could face the death penalty if they lied in violation of their cooperation agreements. See generally Shih Wei Su v. Filion, 335 F.3d 119, 126 (2d Cir. 2003) (recognizing that "conviction obtained through testimony the prosecutor knows to be false is repugnant to the Constitution" (citing Mooney v. Holohan, 294 U.S. 103, 112 (1935)). The argument fails because its premise – that the government offered false testimony – is unsupported by the record.

During both of Basciano's trials, Vitale and Cicale each testified to having disclosed to the government their involvement in capital murders. Each man further testified that he believed that, if he violated his cooperation agreement, the government could pursue the death penalty against him. Basciano points to no record evidence that the witnesses did not in fact hold this belief, much less that the government knew their testimony to be false or even mistaken. A witness's understanding of his cooperation agreement with the government

– whether correct or not – is relevant to a jury's assessment of his motives in testifying. See United States v. Carr, 424 F.3d 213, 228 (2d Cir. 2005).

Even assuming that the government is obliged to ensure that its witnesses correctly understand the consequences of cooperation agreements, Basciano fails to provide either factual or legal support for his claim that the government knew that a breach of the cooperation agreements here at issue could not expose the witnesses to capital punishment. During Basciano's 2006 trial, prosecution attorneys represented that they had conferred with the Department of Justice and confirmed that the Attorney General retained discretion to seek the death penalty for capital crimes in the event a cooperation agreement was breached. Further, our precedent supports the government's authority to treat a breached cooperation agreement as unenforceable and to pursue a new indictment. See United States v. Cimino, 381 F.3d 124, 128 (2d Cir. 2004).

Accordingly, we identify no error, let alone plain error, in the admission of the challenged testimony.

3.  The Recusal Challenge

Consistent with a defendant's due process right to a fair trial, a district judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). We review a district court's denial of a recusal motion for abuse of discretion, see LoCascio v. United States, 473 F.3d 493, 495 (2d Cir. 2007), asking whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain

significant doubt that justice would be done absent recusal," United States v. Amico, 486 F.3d 764, 775 (2d Cir. 2007) (internal quotation marks omitted).

Basciano contends that he was denied a fair trial in 2007 by Judge Garaufis's decision not to recuse himself after learning that his name appeared on a purported "hit list" created by Basciano following the 2006 trial. This court addressed essentially the same claim in 2008 when we denied Basciano's petition for a writ of mandamus requiring Judge Garaufis to recuse himself from presiding over a separate, capital case pending against Basciano. See In re Basciano, 542 F.3d 950 (2d Cir. 2008). Although the standard for mandamus is higher than for direct appeal, see id. at 955-56, we referenced the standard for direct appeal of a recusal decision in the 2008 case, see id., and found no abuse of discretion. We reasoned in part that "[r]equiring a judge to recuse himself because the defendant, in an attempt to change judges, has plotted or threatened to kill the judge would provide any defendant who wanted a new judge with an effective, if in some cases dreadful, method to achieve that end. A defendant cannot be permitted to use such a plot or threat as a judge-shopping device." Id. at 957. That rationale applies with equal force in this case, where the district court expressly found that "one of Basciano's objectives appeared to be to manipulate the judicial process, regardless of whether the list was in fact intended as a hit list." United States v. Basciano, 2008 WL 794945, at *10. Indeed, Judge Garaufis's careful eliding of the latter question, coupled with his exemplary attention to Basciano's rights throughout the trial, would not permit any objective, disinterested observer to entertain significant doubt as to whether justice was done in this case without recusal. See United States v. Amico, 486 F.3d at 776.

Basciano's attempt to analogize this case to Caperton v. A.T. Massey Coal Co., 129 S. Ct. 2252 (2009), is unconvincing. In that case, a litigant had played a "pivotal role" in the election of the presiding judge, an "extraordinary situation" that by itself could give rise to a perception of indebtedness that might allow the judge's impartiality to be questioned. Id. at 2262-63, 2265. Requiring recusal to ensure that a litigant's own actions do not give rise to an appearance of partiality in his favor does not mean that a litigant can compel recusal simply by taking actions that give rise to an appearance of partiality against him. In the Caperton situation, recusal ensured justice to the party opponent who had done nothing to raise a partiality concern. In Basciano's case, recusal would simply reward a defendant who had manipulated the legal system to engage in judge shopping. See In re Basciano, 542 F.3d at 957. To be sure, due process demands that even such a defendant be afforded a fair trial, but, for the reasons already discussed, no objective observer fully informed of the circumstances of Basciano's case could entertain any doubt that he received just that.

We therefore reject the recusal challenge as without merit.

4.   The Constructive Amendment/Variance Challenge

Basciano challenges his substantive racketeering conviction on the ground that evidence and jury instructions at his 2007 trial constructively amended or prejudicially varied from the indictment. See United States v. Rigas, 490 F.3d 208, 225-26 (2d Cir. 2007) (discussing requirements for claims of constructive amendment and prejudicial variance). Specifically, he complains that the prosecution and the district court identified Dominick Martino as the alleged victim of the "Solicitation to Murder – John Doe #1" charged as

9

predicate "Racketeering Act Two," see United States v. Basciano, No. 03 Cr. 929, Superseding Indictment ¶ 18, whereas the identity of John Doe #1 was unknown to the grand jury. It is therefore uncertain, Basciano argues, whether he was convicted of the offense charged. The challenge fails because, contrary to Basciano's argument, the record shows that the government's grand jury presentation included evidence specifically identifying John Doe #1 as Dominick Martino. In short, the trial proof and jury charge corresponded with the charged offense, precluding a claim of constructive amendment or variance.

5. Basciano's Waiver of Counsel's Conflict

Basciano submits that he was denied his Sixth Amendment right to effective assistance of counsel because his lead lawyer at trial – one of three – had a conflict of interest arising from his previous representation of a cooperating witness for the government. The argument is without merit.

While the right to effective assistance of counsel "includes the right to be represented by an attorney who is free from conflicts of interest," a conflict arising from an attorney's prior representation of a trial witness is generally waivable so long as the waiver is knowing and intelligent. United States v. Perez, 325 F.3d 115, 125-27 (2d Cir. 2003). Here, Basciano waived the attorney conflict only after the district court appointed independent counsel to advise him on the nature and consequences of the conflict. One month later, the district court conducted a hearing to confirm that Basciano (1) understood both the conflict and the plan to address it by having a different member of his defense team cross examine the witness, and (2) with that understanding wished to continue with the same counsel. Although the

10

colloquy was not designed to elicit the preferred "narrative statement" from the defendant, United States v. Curcio, 680 F.2d 881, 889 (2d Cir. 1982), Basciano's answers to the district court's inquiries, viewed in context, "leave no doubt that [he] understood his choice," and knowingly and intelligently waived any conflict, Williams v. Meachum, 948 F.2d 863, 867 (2d Cir. 1991).

Accordingly, we conclude that the district court acted well within its discretion in refusing to order a new trial based on ineffective assistance of counsel.

6.   Conclusion

We have considered Basciano's other arguments on appeal and conclude that they are without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court



11


A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit