10-3-10

Dear Judge Garaufis

Please consider this letter along with any other arguments my attorney's will make regarding the courts recusal based upon Actual bias.

Also please consider my letter to the court that was filed under seal by the court on September 14, 2010 when deciding recusal

"The Second Circuit in deciding bias did not apply an actual bias test. It applied an objective standard consistent with the holding in Caperton"

Obviously, Caperton itself as well as all the cases addressing recusal in various circumstances look, in part, to actual bias because if there is actual bias, that simplifies the analysis. But that's clearly not the standard that was employed by the second Circuit" [See June 26th, 2009 status Conference page 12]

The Court in Denying Recusal on November 30, 2006 stated: "It appears that one of Basciano's objectives in writing the May 2006 list and filing this motion is to 'engineer' this courts Recusal, much as he facilitated changes in his representation. Such a thinly disguised effort to manipulate the judicial process cannot be sanctioned by this court.

"Furthermore, there has never been any assertion by any defendant that this court has

displayed actual bias at any time" [See Decision Issued November 30, 2006]

This Defendant is making a claim of Actual bias. That claim is Addressed in this letter.

I believe, as I stated in my letter to the court which the court filed on September 14, 2010, that the courts failure to let the Defense know of the Barone letter Reveales the courts Actual bias towards me. [See letter I wrote that the court Filed on September 14, 2010]

Furthermore, I believe the courts letter to the Attorney General was a "thinly disguised effort to manipulate the Judicial Process" in-order for the court to Remain on my Death Penalty case. I also believe the court and the government will argue that the court was not bias by using the courts letter to the Attorney General to try and prove that point. Which is exactly what I anticipated when I wrote the court on August 25 2010 [See letter the court Files on Sept 14, 2010]

However, the court knew or should have known that the government was willing to spend hundreds of millions of dollars to prosecute Khalid Sheik Mohammed in the Southern District of New York and money would not have been an excuse for the A.G. to Reconsider the Death penalty on me. Especially that the cost to prosecute me is a drop in the bucket compared to what the government was willing to spend

against him. I am not comparing myself or the circumstances of that investigation to me or my case. I am using that case as an example to show the court that the court should have known that money would not have been the deciding factor for the Attorney General to remove the Death Penalty on me. Especially given the fact that the prosecutors have accused me of plotting to kill his honor, Mr. Andres and three cooperating witnesses.

Ironically on June 26, 2009 when the court relieved Jane Smith the court stated that money was not "an issue in this decision. So take money off the table."

There were many other reasons the court could have given the A.G in-order for him to have reconsidered the death penalty; Starting with the fake murder plot Cicale hatches in Wit-Sec and the conflicting testimony during two separate trials other than mine in which Cicale and CW-1 gave diametrically opposed versions to the fake murder plot Cicale tries framing me with; to Joe Massino who was deauthorized despite participating in thirteen homicides with his brother-in-law, Sal Vitale, who was also death eligible before he began to cooperate; to culpable others who received as little as ten years for their alleged participation in the Pizzolo homicide; to the fact that this court

-4-

sentenced a defendant under a 11(c)(1)(c) plea to ten years regarding his alleged participation in a triple homicide involving the enterprise the government alleges that I was a part of.

IF the court were looking for reasons to give to the Attorney General the list goes on and on.

Furthermore, it has recently been brought to my attention, by counsel, that both Mr. Andres and a relative work in the Obama Administration. And that Mr. Andres works as one of Attorney General Holders assistants. If this is true DID Mr. Andres have any part in DECIDING not to DeAuthorize me for the Death Penalty?

In any event, it "appears" that the court was cognizant that money would not have made a difference in the Attorney Generals decision to Deauthorize but it was a good tool to use once the Barone letter surfaced in-order to argue against actual bias. Which the court undoubtly knew was an issue the defense would raise once the Barone letter came out of the darkness.

However, if the court argues that it could not turn over the Barone letter due to security concerns. I respectfully submit to the court the government is very adept at redacting, retracting and not revealing who their witnesses are when they

give the defense Brady/Giglio, Rule 16 or any other discovery material - I.E - The government claims that I handed an inmate a "hit-list" with Yark honors name on it but the government argues they cannot give the defense the ex-parte minutes they had with magistrate Levy because it will reveal who the inmate is!! - So said Alice as she was going through the looking glass to Wonderland. - However the government claims the defense has enough information regarding the alleged "hit-list" that we do not need to know who the inmate or his attorney are or any other pertinent information regarding this alleged "hit-list" in order for the defense to reveal to a jury the bad-faith of the governments investigation.

These are the obstacles that the defense has had in front of them when trying to do their due diligence and investigation.

It also appears that the court intentionally withheld the Barone and Muniz (Barones lawyer) letters to prevent the defense from investigating the matter fully and to incorporate the fruits of that investigation into a still pending Rule 33; a still pending direct appeal that was not due yet; and to bring forth another Rule 33 before I was time barred from doing so on July 30, 2010. [See Liljeberg v. Health Svcs. Acquisition Corp., 486 U.S. 100 L. Ed. 2d 855, 108 S. Ct. 2194 (1988)]

Below are events that followed after the court received the Barone letter:

— On February 2, 2010 the court receives the Barone letter dated January 31, 2010 and files it under seal. The court did not notify the defense that it had received a letter from a (C.I), Barone who claimed to be a "Good friend" of Cicales and that "he (C.I) is directly responsible for saving your life not to mention the A.U.S.A.'s as well" And further states that he "Risked (his) life everyday for years working inside the Bonanno family" And that his "Good friend at that time is the star witness against Vincent 'Vinny Gorgeous' Basciano."

— Barones Attorney Jose Muniz ECF's the court on June 28, 2010 and reveals Barones status as a government informant for eighteen years [See Document 65-2 filed on 6/28/10 in case # 1:09-cr-00091-NRB] However the court at that point does not inform the defense that it was sitting on the Barone letter. At this point Barone is noted as a cooperator.

— On July 20, 2010 Michael Bachrach (appellate counsel) requests a two week adjournment until August 6, 2010 to summit my Rule 33 [See Document 1148 filed on 7/20/10 in 03-CR-00929-NGG] However the court still did not inform the '03 appellate team about the Barone letter or Muntz letter and therefore I was time barred as of 7/30/10 to bring forth a new Rule 33 based on this explosive information regarding Barone and his infiltration of Cicale's crew as a government agent from at least 2004 through February 2005. Also note: the Defense had no reason to look for any correspondence between Barones lawyer and the court since the Defense did not know Barone was a cooperating witness.

— On August 10, 2010 Mr. Goltzer faxed the court regarding information that the Defense recently became aware of regarding Barone being a confidential informant. In that fax Goltzer specifically requested that the court refrain from ruling on "Basciano's pending Rule 33 motion in connection with his '03 case until his attorneys have been provided with the requested documents"

- On August 13, 2010 the court ordered the gov't. to turn over all information that Mr. Goltzer requested on August 10, 2010. The court ordered the gov't. to do so in ten days

- On August 17th 2010 the gov't. briefed the court on why my Rule 33 should be denied. [See Doc. 1156 filed on 8/17/10 in 03-CR-00929]

- On August 19, 2010, only two days after the gov't. requested the court to deny my Rule 33 the court granted the governments request and denied my motion - without giving the defense the opportunity to reply to the governments motion and without hearing oral argument on the Rule 33.

  It appears the court did not want the defense to have the Barone information so the court quickly denied my Rule 33 and the defense was not allowed to supplement the motion regarding the explosive revelation that "Cicale's good friend" was a cooperating witness and a C.I. for eighteen years who worked "inside the Bonanno family"

- Ten days after the court denies my Rule 33 Bachrach files a notice of appeal foreclosing the court's jurisdiction in the '03 case

— Since the Barone information was not in my Rule 33 it will not be in my appeal to the second circuit.

I believe I was prejudiced by the courts actions and reveals the courts actual bias towards me.

I believe the Barone letter was confirmation to the court that I DID indeed want to do harm to the court based upon an allegation that involves a "hit-list" by inmate X.

I believe the court's actions or lack there of prove my point.

I believe I should have an unbiased and impartial Judge to preside over my death penalty case.

Although I certainly do not agree to Barones adaptation to events that he describes in his letter I was never given the opportunity to prove otherwise. Predecessor Counsel (Koursaros) informed me that Judge Levy was not allowing the defense to put witnesses on the stand and that he (Levy) would be deciding the issues relating to that list "on paper". Only after magistrate Levy's hearing did I find out that Mr. Koursaros was not accurate.

I have repudiated the governments assertions that a list that was given to them by inmate-X was a "hit-list" or an "artifice" to be used as a tool to recuse the court, from the very first time it was brought to my attention in August 2006. I continue to this day to renounce, that a list given to the government, with the names of your honor, AUSA Andres and three cooperating witnesses was a "hit-list" or a recusal tool. It was an innocuous Santeria list!

However, that list now becomes a powerful tool for the defense to use against the gov't. in order to prove the governments bad faith investigation. I should not be put in a position that the court will not allow the defense to make that argument to a jury because the court believes the list was a "hit-list" and in-order to remain on my death penalty case the court will not allow that list to be part of my defense.

I have brought these arguments to counsels attention. Regarding actual bias. Although counsel agree's with my arguments they believe the issue may not be "ripe yet". I disagree and believe the issue has become "rotten".

I respectfully request the court consider this letter along with my previous letters when considering the latest recusal motion that is due this Friday October 8, 2010. Although this letter will probably

get to the court in two to three weeks it will be mailed out today. [I believe my mail is being held back in MCC. I never had such problems with my mail when I was at MDC].

IF my Attorneys do not address the relevant arguments that I have made in this letter I believe they would not be providing me with effective counsel.

I have indicated to Mr. Jasper that my letters should be filed on ECF.

My concerns are not to draw public attention by embarassing my attorneys or to be critical of the court.

My concerns focus on arguments that I believe should be made and if counsel does not address them my letters indicate that I believe they should have and I would like the court to consider them before rendering any decisions based on arguments pending before the court. In this case, recusal.

As long as I know my letters are part of the record in-order to use for future litigation, if necessary, putting them on the public record, ECF, is inconsequential to me.

My Attorneys will get a copy of this letter and the time and date that I handed this letter to a lieutenant will be posted on the

Outside of the envelope.

    I also want to note that the court, during an ex-parte meeting with Ephraim Savitt encouraged me to write the court anytime I thought it was necessary. However if the court would like to rescind that invitation amidst my recent letter campaign I will always respect and adhere to the courts decisions.

    Thank-You Respectfully Yours

-Vincent J. Basciano-

Vincent J. Basciano 30694-054
150 Park Row
New York Metropolitan Correction Center
New York, New York 10007

Legal Mail

Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Legal Mail

Legal Mail
Legal Mail
Legal Mail
Legal Mail

S. Zuhayr

This letter was given to Lt Delaney on 10-7-10